**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| **KELLI DENISE GOODE, Individually, and also as the Personal Representative of Troy Charlton Goode, Deceased, and as Mother, Natural Guardian, and Next Friend of R.G., a Minor, and also on behalf of all similarly situated persons** | **PLAINTIFF** |
| **V.** | **NO. 3:17-CV-60-DMB-RP** |
| **THE CITY OF SOUTHAVEN, et al.** | **DEFENDANTS** |

**ORDER**

Before the Court is Baptist Memorial Hospital-Desoto's "Motion to Exclude Testimony of Plaintiff's Expert, Mark Fowler, J.D., M.D." Doc. #401.

**I**
**Relevant Procedural History**

On January 13, 2016, Kelli Denise Goode—individually, and in her capacity as the personal representative of her deceased husband, as next friend to her minor son, and on behalf of "similarly situated persons"—filed a complaint in the United States District Court for the Western District of Tennessee "seek[ing] damages and injunctive relief based upon the untimely death of [her husband] Troy Charlton Goode …." Doc. #1. On August 15, 2016, Kelli,[1] in the same capacities as that in her original complaint, filed an amended complaint, naming as defendants the City of Southaven, Todd Baggett, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham, Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, Richard A. Weatherford (collectively, "Southaven Defendants"); John Does 1-10; Baptist Memorial Hospital-

---

[1] To avoid confusion, the Goodes' first names are used.

Desoto ("BMH-D"); Southeastern Emergency Physicians, Inc.;[2] and Lemuel D. Oliver, M.D. Doc. #107. In her amended complaint, Kelli asserts numerous state and federal claims against the defendants regarding Troy's death.[3]

On March 31, 2017, this action was transferred from the Western District of Tennessee to this Court. Doc. #246. On January 23, 2018, following a period of extended discovery, BMH-D filed a motion to exclude the testimony of Kelli's expert Mark Fowler, along with a supporting memorandum. Doc. #401; Doc. #402. The same day, Oliver joined BMH-D's motion and supporting memorandum. Doc. #416. Two weeks later, Kelli filed a response to the motion, Doc. #454, which she adopted by reference as her response to Oliver's joinder, Doc. #441. One week later, BMH-D filed a reply.[4] Doc. #465.[5]

## II
## Legal Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[2] Southeastern Emergency Physicians, LLC (previously identified as Southeastern Emergency Physicians, Inc.) was subsequently dismissed with prejudice by stipulation. Doc. #496.

[3] Kelli's 66-page amended complaint contains fourteen counts: civil conspiracy (Count I); 42 U.S.C. § 1983 claims (Counts II-VIII); violation of Tennessee Code § 40-32-101 (Count IX); violation of Mississippi Code §§ 11-7-13 and 11-46-9 (Count X); intentional and negligent infliction of emotional distress (Count XI); common law "outrage" (Count XII); violation of right to interstate travel and hospital visitation (Count XIII); and medical malpractice (Count XIV).

[4] Oliver did not join BMH-D's reply.

[5] Many of the parties' submissions on the evidentiary motions filed in this case fail to comply with the Court's local rules. For example, in some instances, exhibits are attached to memorandum briefs or to documents which are in substance and form memorandum briefs because they contain argument and authorities. *See* L.U. Civ. R. 7(b)(2) ("The memorandum brief must be filed as a separate docket item from the motion or response and the exhibits."). Filings that fail to comply with the Court's procedural rules generally are stricken and/or not considered by the Court. For the sake of efficiency, the Court will excuse these procedural failures in this instance. However, the Court reminds the parties that "[a]ttorneys practicing before the district courts of Mississippi are charged with the responsibility of knowing the Local Rules … and may be sanctioned for failing to comply with them." L.U. Civ. R., Preamble..

> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court has a "special obligation … to ensure that any and all scientific testimony … is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (internal quotation marks omitted). "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal alterations and quotation marks omitted).

When considering reliability, *Daubert* dictates that a trial court should consider the "extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion*, 171 F.3d 308, 311–12 (5th Cir. 1999)). Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

# III
# Analysis

Mark Fowler is a licensed, practicing physician in Tennessee with experience in emergency room medicine and a board certification in family medicine. Doc. #401-1 at 5. His expert report indicates that his "opinion is that the staff of the Baptist Desoto and Dr. Oliver … failed to meet the applicable standard of care and were negligent" on several grounds.[6] *Id*. at 3. In opining on the medical care rendered by Southaven EMS, the nurses at BMH-D, and Oliver, Fowler relied "upon [his] education and experience as a medical doctor with a particular emphasis on emergency care." *Id*. at 1. He submitted a supplemental expert report asserting further opinions on the manner of Troy's restraint at BMH-D, chiefly that "after administration of the chemical restraints[,] Mr. Goode should have been closely monitored. Failure to monitor his heart and breathing was a serious breach of the applicable standard of care." *Id*. at 5. For the opinions in his supplemental report, Fowler relied upon his "education and experience" as well as review of regulations propounded by the Centers for Medicare & Medicaid Services. *Id*.

BMH-D and Oliver move to exclude Fowler's testimony on grounds that Fowler "(1) does not claim or express familiarity with the standard of care applicable … in his expert reports; and (2) last practiced in an emergency department setting in April, 2013 – over two years prior to the

---

[6] Fowler contends the BMH-D staff and Oliver:

> (1) Failed to promptly assess and treat a supraventricular tachycardia. (2) Failed to properly communicate effectively thereby allowing a supraventricular tachycardia to go untreated. (3) Failed to effectively and thoroughly trouble-shoot a low oxygen saturation reading which would have suggested a cause (cardiac dysrhythmia) warranting treatment. [(4)] Failed to promptly assess and effectively treat a patient in a psychotic rage, leaving him hogtied in the prone position for over 40 minutes after arrival. [(5)] Failed to take effective measures to relief [sic] the patient's distress by turning him to the supine position, despite the hospital protocol requiring the lease [sic] restrictive restraint. [(6)] Failed to post a trained medical staff member in the room to observe the patient. As a direct and proximate result of these failures, Mr. Goode experienced cardiopulmonary arrest in the prone hogtied position in which he arrived and died.

Doc. #401-1 at 3.

admission at issue." Doc. #401 at 2.

In evaluating these issues, the Court notes that Mississippi substantive law applies to Kelli's medical malpractice claims, although the Federal Rules of Evidence govern the procedural admission of expert testimony in federal court.[7] *Kovaly v. Wal-Mart Stores Tex., L.L.C.*, 627 F. App'x 288, 290 (5th Cir. 2015). Accordingly, in a diversity case such as this, the Court considers (1) whether the challenged expert should be qualified as an expert under federal law; and (2) whether the proffered testimony would be relevant under substantive state law. *See Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002) (noting although admissibility of expert testimony in federal court is procedural, "[s]tate witness competency rules are often intimately intertwined with a state substantive rule … especially … with medical malpractice statutes, because expert testimony is usually required to establish the standard of care").

### A. Reliability of Fowler's Standard of Care Opinion

"Establishing a medical standard of care requires an expert to opine on what decisions a reasonably prudent professional in the relevant community could have made regarding the medical issue." *Kovaly*, 627 F. App'x at 291. "The *Daubert* factors do not apply as readily" to this line of inquiry, "so courts must consider other factors when determining admissibility, such as whether the expert has enough education and relevant experience to reach a reliable opinion." *Id*. (footnote omitted); *see Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (when "expert's testimony is based mainly on his personal observations, professional experience, education and training," court should go beyond the five enumerated *Daubert* factors to determine reliability). "Whether an expert can reliably opine on a medical standard of care turns not on job titles but on

---

[7] It is axiomatic that in federal diversity actions, state law governs substantive issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

5

the expert's education, experience, and other factors." *Nagle v. Gusman*, No. 12-1910, 2016 WL 9411377, at *7 (E.D. La. Feb. 25, 2016) (citing *Kovaly*, 627 F. App'x at 291).

### 1. *General qualifications*

According to BMH-D and Oliver, "[t]he fact that … Fowler has been requested and is willing to give opinions about the 'medical care' at issue does not automatically qualify him to render opinions against any and all medical or nursing personnel involved." Doc. #402 at 4. In response, Kelli argues that Fowler, "due to his extensive work history as an emergency room physician … is familiar with the standard of care in emergency room settings, including the standard of care for nurses providing emergency care and treatment." Doc. #454 at 1–2. In reply, BMH-D reasserts that "in his expert reports … Fowler fails to establish or even claim that he knows the standard of care applicable to its emergency department nursing personnel during the operative time period of July 2015," Doc. #465 at 2 (emphasis omitted); and argues that "Goode attempts to establish … Fowler's knowledge of the standard of care applicable to BMH-D by secondary sources – his work history and deposition testimony" rather than his expert report,[8] *id.* at 3.

The Fifth Circuit has held that "to qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (internal alterations and quotation marks omitted). A trial judge should exclude an expert witness' testimony upon a finding "that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). However, an

---

[8] As parties cannot bolster an expert report with sources not relied on by the expert, the Court will rely on Fowler's expert report rather than his deposition or other secondary sources. *See, e.g., Robinson v. Nationwide Mut. Fire Ins. Co.*, No. 4:11-cv-103, 2012 WL 5866302, at *1 (N.D. Miss. Nov. 19, 2012) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony.").

expert need not be "highly qualified" to testify, as "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

It is "an abuse of discretion for a trial court to exclude expert witness testimony on the ground that the witness is not qualified to render the opinion at issue because the witness lacks a certain educational or other experiential background." *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013) (quoting 4 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 702.04(1)(a) (Joseph M. McLaughlin ed., 2d ed. 1997)). Thus, "a physician who is a general practitioner usually may testify as to medical problems that a specialist might treat in a clinical setting." 29 Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 6264.2 (2d ed. 2018); *see United States v. Viglia*, 549 F.2d 335, 336 (5th Cir. 1977) (holding pediatrician with medical and pharmacology degrees but no experience in treating obesity had sufficient knowledge, training, and education to testify regarding controlled substance's effect on obese persons). Under this standard, "[a] lack of specialization should generally go to the weight of the evidence rather than its admissibility …." *Liu*, 716 F.3d at 168.

Fowler graduated from the University of Tennessee, Memphis College of Medicine; is licensed to practice medicine in Tennessee; and is board certified in family medicine. Doc. #444-11 at 5; Doc. #454-2 at 2–4. His curriculum vitae indicates he practiced emergency medicine in some capacity from July 2000 to April 2013.[9] Based on his more than ten years of experience in emergency medicine, Fowler is more than qualified to offer his expert opinion that there was a

---

[9] Fowler practiced from July 2000 to July 2001, as a part-time emergency room physician at Baptist Memorial Hospital-Tipton in Tennessee; from January 2001 to August 2005, as a part-time emergency room physician at Baptist Memorial Hospital-Union City in Tennessee; from November 2007 to January 2008, as an emergency room physician at Humboldt General Hospital in Tennessee; from October 2007 to February 2009, as a full-time emergency room physician at Baptist Memorial Hospital-Union City; and from April 2009 to April 2013, as an emergency room physician at Baptist Memorial Hospital-Tipton. Doc. #454-2 at 2–3.

breach in the standard of care in Troy's treatment. *See, e.g., Randle v. Crosby Tugs, L.L.C.*, No. 16-15429, 2017 WL 4226151, at *6 (E.D. La. Sept. 22, 2017) (qualifying physician to testify on standard of care in emergency medicine although expert did not work in emergency room or specialize in emergency medicine because "in general medical doctors experience exposure to emergency medicine during their training and have expertise in the area of medicine in general").

### 2. Two-year gap

BMH-D and Oliver contend that "[b]y virtue of his decision in April 2013, to pursue opportunities away from the field of emergency medicine, Dr. Fowler lacks the background, training and experience to know the standard of care applicable … in July 2015, a standard he does not even claim to know." Doc. #402 at 7. In response, Kelli argues that the "standards applicable to emergency medicine have not changed since 2013. Moreover, Dr. Fowler currently practices emergency medicine in a clinical setting." Doc. #454 at 2.

BMH-D cites no law in support of the proposition that a federal court, in its gatekeeping function, cannot qualify a licensed physician with over a decade of experience in emergency medicine because he has not practiced emergency medicine for the preceding two years.[10] To the contrary, the Third Circuit has held that an expert may be qualified despite leaving a field, unless the opposing party can show that the field has "changed greatly" during the expert's absence. *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 328 (3d Cir. 2002). BMH-D has produced no evidence to suggest that the field of emergency medicine has changed greatly in the preceding two years. Accordingly, Fowler's absence from emergency practice does not warrant his exclusion.

---

[10] In *Sacks v. Necaise*, a Mississippi state court case, an expert was qualified despite not having practiced a particular specialty for over a decade. *See* 991 So.2d 615, 622 (Miss. Ct. App. 2007) (expert not precluded from testifying on chemotherapy administration, even though she had not been practicing nurse in twenty years and was not a certified chemotherapy nurse, because she was familiar with current standards of chemotherapy administration).

### B. Relevance of Fowler's Standard of Care Opinion

Under Mississippi law, an expert need "not have to practice in, or be a specialist in, every area in which he offers an opinion, but he must demonstrate that he is sufficiently familiar with the standards in that area by his knowledge, skill, experience, training, or education …." *Bailey Lumber & Supply Co. v. Robinson*, 98 So.3d 986, 992 (Miss. 2012) (quotation marks omitted). Thus, the "general rule as to expert testimony in medical malpractice actions is that a specialist in a particular branch within a profession will not be required." *Worthy v. McNair*, 37 So.3d 609, 616 (Miss. 2010) (quotation marks omitted). "[I]t is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." *Causey v. Sanders*, 998 So.2d 393, 403 (Miss. 2008).

Fowler's expert report "articulate[s] an objective standard of care." *Estate of Northrop v. Hutto*, 9 So.3d 381, 384 (Miss. 2009). It also "identifies the particular(s) wherein the physician breached [a] duty and caused injury to the plaintiff patient …." *Phillips ex rel. Phillips v. Hull*, 516 So.2d 488, 491 (Miss. 1987), *overruled on other grounds by Whittington v. Mason*, 905 So.2d 1261 (Miss. 2005). As for the argument that Fowler cannot testify against BMH-D nurses, under Mississippi law, a doctor "may be sufficiently qualified to testify as to the standard of care required by the nursing staff." *Miller v. Monoghan*, No. 2:06-CV-131, 2008 WL 821928, at *3 (N.D. Miss. Mar. 26, 2008). Thus, Fowler's offered testimony is relevant under Mississippi substantive law.

### IV
### Conclusion

Considering the Fifth Circuit's guidance on designating medical standard of care experts as well as Mississippi's substantive law governing the underlying medical malpractice claim, the Court concludes that Fowler is qualified as an expert by knowledge, skill, experience, training, or education and that his scientific, technical, or other specialized knowledge will assist the trier of

fact to understand the evidence or to determine a fact in issue. The arguments urged by BMH-D regarding Fowler go to weight rather than admissibility. Accordingly, the motion to exclude [401] is **DENIED**.

**SO ORDERED**, this 27th day of September, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**