# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**KELLI DENISE GOODE, Individually, and also as the Personal Representative of Troy Charlton Goode, Deceased, and as Mother, Natural Guardian, and Next Friend of R.G., a Minor, and also on behalf of all similarly situated persons**                                  **PLAINTIFF**

**V.**                                  **NO. 3:17-CV-60-DMB-RP**

**THE CITY OF SOUTHAVEN, et al.**                                  **DEFENDANTS**

## ORDER

Before the Court is Kelli Denise Goode's motion to exclude expert opinion testimony that Troy Goode ingested unknown and unidentified drugs. Doc. #405.

## I
### Relevant Procedural History and Background

On January 13, 2016, Kelli Denise Goode—individually, and in her capacity as the personal representative of her deceased husband, as next friend to her minor son, and on behalf of "similarly situated persons"—filed a complaint in the United States District Court for the Western District of Tennessee "seek[ing] damages and injunctive relief based upon the untimely death of [her husband] Troy Charlton Goode …." Doc. #1 at 1–2. On August 15, 2016, Kelli,[1] in the same capacities as that in her original complaint, filed an amended complaint, naming as defendants the City of Southaven, Todd Baggett, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham, Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, Richard A. Weatherford; John Doe's 1-10; Baptist Memorial Hospital-Desoto ("BMH-D"); Southeastern

---
[1] To avoid confusion, the Goodes' first names are used.

Emergency Physicians, Inc.;[2] and Lemuel D. Oliver, M.D. Doc. #107. In her amended complaint, Kelli asserts numerous state and federal claims against the defendants regarding Troy's death.[3] *Id*. at 13.

On March 31, 2017, this action was transferred from the Western District of Tennessee to this Court. Doc. #246. Following transfer, United States Magistrate Judge Roy Percy issued a case management order setting, among other things, the defendants' experts disclosure deadline as September 8, 2017. Doc #283. Oliver disclosed as experts, among others, Charles Dackis, M.D., and Gregory Davis, M.D., along with their expert reports. *See* Docs. #406-4, #406-5, #446-3.

Dackis and Davis opine that the beta-phenethylamine detected in one of the toxicology tests conducted as a part of Troy's autopsy may be evidence of an unknown drug that is not LSD or marijuana.[4] Doc. #406-5 at 7; Doc. #446-3 at 2. Dackis opines that beta-phenethylamine "has stimulant properties (like amphetamine or cocaine) and might have been an adulterant" added to the LSD taken by Troy. Doc. #406-5 at 7. Davis discusses beta-phenethylamine in his expert report:

> Phenethylamine is a naturally-occurring substance, found in human biological fluids in trace amounts during life and in larger amounts after death. It is also known to be a psychoactive substance with history of illicit use, often at music venues such as festivals, concerts, or raves. Adverse effects with use of this drug include disorientation and frightening hallucinations as well as anxiety and tachycardia.

---

[2] Southeastern Emergency Physicians, LLC (previously identified as Southeastern Emergency Physicians, Inc.) was subsequently dismissed with prejudice from this case by stipulation. *See* Doc. #496.

[3] Kelli's 66-page amended complaint contains fourteen counts: civil conspiracy (Count I); 42 U.S.C. § 1983 claims (Counts II-VIII); violation of Tennessee Code § 40-32-101 (Count IX); violation of Mississippi Code §§ 11-7-13 and 11-46-9 (Count X); intentional and negligent infliction of emotional distress (Count XI); common law "outrage" (Count XII); violation of right to interstate travel and hospital visitation (Count XIII); and medical malpractice (Count XIV).

[4] According to an autopsy of Troy conducted by Deputy Chief Mississippi Medical Examiner Erin Barnhart, M.D., Troy died from "[c]omplications of LSD toxicity." Doc. #406-2 at 1, 4. A "supplemental [toxicology] report" ordered by Barnhart tested negative for various hallucinogenic beta-phenethylamine compounds but positive for marijuana and LSD. *Id*. at 5; Doc. #406-3 at 1–3. An August 4, 2015, NMS Labs toxicology report on tissue samples taken by Kelli's expert Cyril Wecht, M.D., during a second autopsy indicated a positive test for marijuana and a trace amount of beta-phenethylamine but not LSD. Doc #446-1 at 1, 19; Doc. #446-2 at 2.

> Such a drug may explain some of Mr Goode's symptomatology, including excited delirium, on the day of his death.

Doc. #446-3 at 2 (footnotes omitted).

After the close of discovery, on January 23, 2018, Kelli, pursuant to Federal Rules of Evidence 702 and 403, filed a motion to exclude "expert opinion testimony that Troy Goode ingested unknown and unidentified drugs," Doc. #405, and a memorandum in support, Doc. #406. Two weeks later, Oliver filed a response, Doc. #446, and memorandum in opposition, Doc. #449. One week later, Kelli replied. Doc. #466.[5]

## II
## Legal Standard

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court has a "special obligation … to ensure that any and all scientific testimony is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (alterations and internal quotation marks omitted). "To establish reliability under *Daubert*, an

---

[5] Many of the parties' submissions on the evidentiary motions filed in this case fail to comply with the Court's local rules. For example, in some instances, exhibits are attached to memorandum briefs or to documents which are in substance and form memorandum briefs because they contain argument and authorities. *See* L.U. Civ. R. 7(b)(2) ("The memorandum brief must be filed as a separate docket item from the motion or response and the exhibits."). Filings that fail to comply with the Court's procedural rules generally are stricken and/or not considered by the Court. For the sake of efficiency, the Court will excuse these procedural failures in this instance. However, the Court reminds the parties that "[a]ttorneys practicing before the district courts of Mississippi are charged with the responsibility of knowing the Local Rules … and may be sanctioned for failing to comply with them." L.U. Civ. R., Preamble.

expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (alterations and internal quotation marks omitted).

When considering reliability, *Daubert* dictates that a trial court should consider the "extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion*, 171 F.3d 308, 311–12 (5th Cir. 1999)). Overall, the trial court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

### III
### Analysis

Kelli moves under Rules 702 and 403 to exclude expert opinions that Troy ingested unknown and unidentified drugs—specifically, any expert testimony "that Troy may have taken a phenethylamine-containing compound and that such a compound might explain various actions he took." Doc. #406 at 2–3 (emphasis omitted).

Kelli contends that beta-phenethylamines are "naturally-occurring … in human biological fluids after death [which] rise post-mortem due to the putrefaction of human bodily tissues" and has offered a scientific article supporting the proposition that the "structure of phenethylamine is

4

similar to some amphetamines, leading to occasional false positive results during screening with immunoassays." *Id*. at 2 (citing Doc. #406-1 at 2). Kelli argues that any expert opinion that Troy ingested a compound containing beta-phenethylamine should be excluded as speculative and lacking "a reasonable degree of medical certainty," *id*. at 3, because Oliver's experts (1) do not "attempt[] to distinguish the normal post-mortem levels of phenethylamine from the levels present in Troy's blood," *id*. at 4; (2) do not "identif[y] the suspected phenethylamine-containing compound or suggest[] any method, time, place, or source of ingestion," *id*.; and (3) do not explain why beta-phenethylamine was found "only on the later of the two autopsies, after Troy's body had undergone putrefaction" or "why the phenethylamine-containing compound was not caught by the more specific 'designer drug' analysis" performed as part of the first autopsy, *id*. at 5. Kelli maintains that any expert testimony on beta-phenethylamine should be excluded because such evidence is "likely to mislead or confuse the jury." *Id*.

In response, Oliver contends that "defendants are entitled to question plaintiff's experts – and present supporting expert opinions – regarding possible alternative explanations that are inconsistent with the theory of cause advanced by plaintiff's experts." Doc. #449 at 2. Specifically, Oliver seeks to rebut Kelli's argument that excited delirium did not cause Troy's death as "excited delirium is primary linked to cocaine and not LSD," *id*. at 6; and contends it would be proper to introduce evidence "regarding the possibility that beta-phenethylamine caused or contributed to Troy Goode's bizarre behavior and to the excited delirium that caused his death," *id*. at 1–2. Oliver further argues that the "proponent of expert testimony need only prove that the testimony is reliable, not that it is correct to any degree of certainty" and "concern about the level of certainty expressed in the challenged expert testimony goes to the weight – not the admissibility – of the testimony …." *Id*. at 5. In support of this argument, Oliver notes that "[t]here is no expert

report or deposition testimony that discusses whether there is an inconsistency in these two toxicology reports and what might explain any inconsistency."[6] *Id.* at 3. Oliver also asserts that the Court should not reach Kelli's argument under Federal Rule of Evidence 403 due to "underdeveloped and conclusory arguments." *Id.* at 8.

The Court begins by noting that Kelli's argument under Rule 403 is insufficiently briefed, conclusory, and lacking citation to legal authority. The Court therefore deems the Rule 403 argument waived. *See United States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009) (waiving claims for inadequate briefing where movant merely described list of grievances without explaining them or citing to record or legal authority).

Kelli's argument under Rule 702, however, is adequately briefed and persuasive. As part of a *Daubert* analysis, courts consider whether an expert offering scientific testimony "has adequately accounted for obvious alternative explanations." *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 166 F.Supp.3d 654, 662 (E.D. La. 2016) (citing *Claar v. Burlington N.R.R. Co.*, 29 F.3d 499 (9th Cir. 1994)) (testimony excluded where, among other things, expert failed to consider other obvious causes for plaintiff's condition).[7] In offering their opinions that the presence of the beta-phenethylamine compounds in the toxicology report is consistent with the ingestion of certain hallucinogenic drugs, Dackis and Davis fail to adequately account for an obvious alternative explanation—that the beta-phenethylamine compounds were present due to natural bodily decomposition. Dackis' report does not even mention that phenethylamine compounds are produced by bodily decomposition, while Davis' report merely relates that

---

[6] Oliver's memorandum notes that neither Dackis nor Davis were deposed, that Kelli's expert Michael Arnall, M.D., did not address beta-phenethylamine's significance, and that Wecht stated he was "not sure from which drug it comes." Doc. #399 at 24; Doc. #449 at 4.

[7] *Cf. Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996) (possibility of uneliminated causes presents a question of weight not admissibility, so long as most obvious causes have been considered and reasonably ruled out by expert).

"[p]henethylamine is a naturally-occurring substance, found in human biological fluids in trace amounts during life and in larger amounts after death." Doc. #446-3 at 2.

It is thus clear that both Dackis and Davis failed to adequately account for the obvious alternative explanation that the beta-phenethylamine compounds were produced by bodily decomposition. Neither Dackis nor Davis considered and reasonably ruled out the prospect of bodily decomposition such that Kelli's arguments against admissibility of their opinions would be directed towards their weight. Accordingly, Dackis and Davis will be precluded from testifying that the presence of the beta-phenethylamine compound may have resulted from Troy's ingestion of an hallucinogenic drug.

## IV
## Conclusion

For the reasons above, Kelli's motion to exclude evidence of unknown and identified drugs [405] is **GRANTED**.

**SO ORDERED**, this 27th day of September, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**