# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**KELLI DENISE GOODE, Individually, and also as the Personal Representative of Troy Charlton Goode, Deceased, and as Mother, Natural Guardian, and Next Friend of R.G., a Minor, and also on behalf of all similarly situated persons**          **PLAINTIFF**

**V.**          **NO. 3:17-CV-60-DMB-RP**

**THE CITY OF SOUTHAVEN, et al.**          **DEFENDANTS**

## ORDER

Before the Court is Kelli Denise Goode's motion to exclude the testimony of William T. Gaut, Ph.D. Doc. #407.

### I
### Procedural History and Relevant Background

On January 13, 2016, Kelli Denise Goode—individually, and in her capacity as the personal representative of her deceased husband, as next friend of her minor son, and on behalf of "all similarly situated persons"—filed a complaint in the United States District Court for the Western District of Tennessee "seek[ing] damages and injunctive relief based upon the untimely death of [her husband] Troy Charlton Goode …." Doc. #1 at 1–2. On August 15, 2016, Kelli,[1] in the same capacities as that in her original complaint, filed an amended complaint, naming as defendants the City of Southaven, Todd Baggett, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham, Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, Richard A. Weatherford (collectively, "Southaven Defendants"); John Does 1-10; Baptist

---
[1] To avoid confusion, the Goodes' first names will be used.

Memorial Hospital-Desoto; Southeastern Emergency Physicians, Inc.;[2] and Lemuel D. Oliver, M.D. Doc. #107. In her amended complaint, Kelli asserts numerous state and federal claims against the defendants regarding Troy's death—which Kelli alleges was caused by positional asphyxia and his placement in a maximal, prone restraint.[3] *Id*. at 2, 17.

On March 31, 2017, this action was transferred from the Western District of Tennessee to this Court. Doc. #246. Following a period of extended discovery, on January 23, 2018, Kelli filed a motion to "exclud[e] testimony of William T. Gaut, Ph.D., an expert disclosed by Defendant, the City of Southaven," along with a memorandum brief. Doc. #407; Doc. #413. On February 9, 2018,[4] the Southaven Defendants filed a response and memorandum brief in opposition. Doc. #461; Doc. #462. A week later, Kelli replied. Doc. #477.[5]

## II
## Legal Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[2] Southeastern Emergency Physicians, LLC (previously identified as Southeastern Emergency Physicians, Inc.) was dismissed with prejudice from this case by stipulation on May 9, 2018. Doc. #496.

[3] Kelli's 66-page amended complaint contains fourteen counts: civil conspiracy (Count I); 42 U.S.C. § 1983 claims (Counts II-VIII); violation of Tennessee Code § 40-32-101 (Count IX); violation of Mississippi Code §§ 11-7-13 and 11-46-9 (Count X); intentional and negligent infliction of emotional distress (Count XI); common law "outrage" (Count XII); violation of right to interstate travel and hospital visitation (Count XIII); and medical malpractice (Count XIV). Doc. #107 at 35–62.

[4] The Southaven Defendants requested and were granted additional time to respond. Doc. #427.

[5] Many of the parties' submissions on the evidentiary motions filed in this case fail to comply with the Court's local rules. For example, in some instances, exhibits are attached to memorandum briefs or to documents which are in substance and form memorandum briefs because they contain argument and authorities. *See* L.U. Civ. R. 7(b)(2) ("The memorandum brief must be filed as a separate docket item from the motion or response and the exhibits."). Filings that fail to comply with the Court's procedural rules generally are stricken and/or not considered by the Court. For the sake of efficiency, the Court will excuse these procedural failures in this instance. However, the Court reminds the parties that "[a]ttorneys practicing before the district courts of Mississippi are charged with the responsibility of knowing the Local Rules … and may be sanctioned for failing to comply with them." L.U. Civ. R., Preamble.

(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court has a "special obligation … to ensure that any and all scientific testimony is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (alterations and internal quotation marks omitted). "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (alterations and internal quotation marks omitted).

When considering reliability, *Daubert* dictates that trial courts should consider the "extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion*, 171 F.3d 308, 311–12 (5th Cir. 1999)). Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

Federal Rule of Evidence 704 provides, in pertinent part, that "[a]n opinion is not objectionable just because it embraces an ultimate issue." "Rule 704, however, does not open the

3

door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (emphasis omitted). In distinguishing permissible opinions on ultimate issues from irrelevant legal conclusions, opinions should be "phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read." *Id*.

### III
### Analysis

According to his expert report, William T. Gaut has "testified as an expert in the discipline of police investigative practices and to the principles of police practices, as it pertains to standards and generally accepted patrol practices by law enforcement officers." Doc. #413-1 at 2. Gaut, who served with the Birmingham, Alabama, police department as a detective and captain, has a Ph.D. in criminal justice from Northcentral University, an online education facility.[6] *Id*. at 48, 50. Among other qualifications, Gaut also served "on the original Advisory Committee appointed by the Governor of Alabama to formulate minimum standards of training for … police officers." *Id*. at 4.

In his expert report, Gaut stated that he reviewed "over 1,500 pages of documents" in forming the following six opinions in this case:

> 1. The City of Southaven, through the Southaven Police Department, properly screened, hired, trained, and supervised Southaven police officers.
>
> 2. The Southaven Police Department's response to a call for police services was adequate and in keeping with national law enforcement standards.

---

[6] N. Cent. Univ, *About NCU*, https://www.ncu.edu/about-ncu (last visited Sept. 19, 2018).

3. The force used by Members of the Southaven Police and Fire/EMS Departments was objectively reasonable and in keeping with law enforcement standards.

4. The transportation and medical treatment of Troy Charlton Goode by members of the Southaven Fire Department and Emergency Medical Services was adequate and in keeping with generally accepted emergency services.

5. I saw no evidence of Unconstitutional Practices by the City of Southaven, the Southaven Police Officers, or the Southaven Fire/EMS defendants (John does 6-10), as alleged in the Complaint.

6. I saw no evidence of Acts of Reckless Disregard for the safety and well-being of Troy Charlton Goode.

Doc. #413-1 at 4, 8. Kelli has challenged the admissibility at trial of each of Gaut's opinions.

### A. Opinion #1

Kelli contends that Gaut's opinion that Southaven police officers were properly screened, hired, trained, and supervised should be excluded as unreliable because it lacks a statement of methodology, and as irrelevant because it "simply does not address the excessive force issue" that is the "essence" of her suit. Doc. #413 at 5. Kelli argues that Gaut, as he did as an expert in *Hagan v. Jackson County*,[7] has failed to provide a factual basis for his conclusion because his expert report does not discuss individual officers' training, the adequacy of the training provided to individual officers, or the adequacy of the material provided by relevant police academies on suspect restraint. Doc. #477 at 3 (citing *Hagan v. Jackson Cty.*, No. 1:13CV268, 2016 WL 1091107, at *6 (S.D. Miss. Mar. 21, 2016)).[8] In response, the Southaven Defendants contend that Gaut's opinion is

---

[7] Notably, in his expert report for this case, Gaut did not include *Hagan* in the "list of those cases in which I have given testimony as an expert at trial or by deposition in the preceding five years …." *See* Doc. #413-1 at 2, 53–54.

[8] In *Hagan*, the court determined, "The materials Gaut reviewed do not include the [sheriff department's] training policy nor do they include any documentation of any employee's training or lack thereof. Gaut's proffered opinion makes no real reference to [the sheriff department's] training policy, whether the policy was followed, how the policy was inadequate, or how the deficiency in the policy caused the harm alleged by Plaintiff." No. 1:13CV268, 2016 WL 1091107, at *6. The Southaven Defendants distinguish *Hagan*, claiming it was issued "only after the court had dismissed all claims except a malicious prosecution claim" and that Gaut provided more "thorough information on Southaven training policies and procedures" in this case. Doc. #462 at 5–6.

reliable because he "referenced and applied national standards" and "reviewed and considered the training protocol for Southaven officers … based on his extensive knowledge and experience in police training …." Doc. #462 at 5.

In support of his opinion that the Southaven Police Department properly screened, hired, and supervised its officers, Gaut's expert report merely provides a descriptive overview of the Southaven Police Policy and Procedures Manual.[9] Doc. #413-1 at 8–13. Gaut then concludes that "[t]he evidence clearly shows the screening, hiring and training of Police Officers by the City of Southaven Police Department was adequate and in keeping with police standards and generally accepted police practices." *Id*. at 11. A review of Gaut's expert report suggests that the basis of his challenged opinion is a recitation of the Southaven Police Policy and Procedures Manual without any citation to supporting authority. As in *Hagan*, Gaut's expert report does not "include any documentation of any employee's training or lack thereof." 2016 WL 1091107, at *6. Moreover, Gaut's report does not reference why Southaven's policy was adequate or whether it was followed in this case.

"As a general rule questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). However, "without more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible." *Hathaway*, 507 F.3d at 318 (alterations omitted). Consistent with this rule,

---

[9] The "Fifth Circuit has not addressed the admissibility of expert testimony that compares a municipality's training program to nationally accepted standards." *Escobar v. City of Houston*, No. CIV.A. 04-1945, 2007 WL 2900581, at *10 (S.D. Tex. Sept. 29, 2007). Nevertheless, Gaut is qualified to serve as an expert in law enforcement cases given his years of experience in law enforcement. *See Neal v. City of Hempstead, Tex.*, No. 4:12-CV-1733, 2014 WL 3907785, at *3 (S.D. Tex. Aug. 11, 2014) (qualifying police procedure experts based, among other things, on decades of experience in law enforcement and familiarity with state police training academies and certifications); *Amin-Akbari v. City of Austin, Tex.*, 52 F. Supp. 3d 830, 845 (W.D. Tex. 2014) (same).

6

in a case in which a plaintiff did not supply a police procedure expert's credentials, the Fifth Circuit excluded the expert's testimony as "pure speculation" because he merely asserted that the deputies' training fell short of state and national standards, "yet never described the specific shortfall." *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

Gaut's expert report fails to specify what the relevant standards are—either by way of direct citation to nationally recognized standards or based on his own experience—and whether they were adhered to in this case. Furthermore, Gaut does not address the sufficiency of training in the context of an excessive force claim related to restraint. Instead, Gaut infers the policy was sufficient and adhered to by its very existence. Gaut's opinion on these matters are thus conclusory and properly excluded.

**B. Opinion #2**

Kelli characterizes Gaut's opinion on the adequacy of the Southaven Police Department's response to a call for police services as "completely irrelevant and … therefore of no benefit to the trier of fact" as "the Complaint lacks any allegations of inadequacy of response." Doc. #413 at 7. The Southaven Defendants concede that "[t]o the extent that Goode is not raising [the appropriateness of the Southaven Police Department's response time], Dr. Gaut will not provide opinions on that point." Doc. #462 at 6. Accordingly, Gaut's opinion and testimony in that regard will be excluded.

**C. Opinion #3**

Kelli argues that Gaut's supervision of the "business aspects of the [EMS] department" when he served as a police officer does not qualify him as an expert in emergency medicine such that he could opine on reasonableness of the actions of the Southaven Fire Department/EMS. Doc. #477 at 5–6. Moreover, Kelli submits that Gaut improperly "relies heavily on articles from

7

medical literature that he does not have the background to interpret and understand, much less to explain to a jury," to offer scientific opinions on the link between prone-restraints and positional asphyxia. *Id.* at 4–5. Kelli further argues that Gaut's opinion that the force used by the Southaven defendants "was objectively reasonable" is an impermissible legal conclusion. Doc. #413 at 7–10.

In response, the Southaven Defendants contend Gaut is qualified to opine on the conduct of Southaven EMS personnel, as he was involved in the "regulation of all EMS personnel services in the City of Birmingham, Alabama." Doc. #462 at 7. The Southaven Defendants claim that Gaut has a "Level III Certification [which] is the same as that required for Registered Nurses, Licensed Practical Nurses, and EMS personnel," and note his membership in various organizations related to forensic sciences. *Id*. They represent that Gaut "will not offer legal opinions" and note that he has been admitted by other federal courts to opine whether the use of force is within law enforcement standards. *Id*. at 6–7. Yet the Southaven Defendants also point to college courses Gaut has taken and taught in constitutional law—seemingly suggesting that Gaut is nevertheless qualified to opine on the constitutionality of the conduct at issue. *Id*. at 7–8

First, as discussed in more detail below, Gaut will be precluded from testifying on the conduct of—and standards for—the Southaven Fire and EMS department, as he lacks the experience and qualifications necessary to provide expert testimony as to those defendants.

Second, in an excessive force case, "whether the officers' use of force was objectively reasonable [is] a question the jury must ultimately decide." *Lopez v. City of Cleveland*, No. 1:13 CV 1930, 2016 WL 6587463, at *4 (N.D. Ohio Apr. 18, 2016). Accordingly, courts have excluded expert testimony describing officer conduct as "objectively reasonable" for "using judicially defined or legally specialized terms." *Godinez v. Huerta*, No. 16-CV-0236, 2018 WL 2018048, at

*5 (S.D. Cal. May 1, 2018) (collecting cases). Notably, the Fifth Circuit has held that a police officer is precluded from testifying that a sheriff's shooting of an unarmed suspect was "reasonable" because such testimony would offer a legal conclusion. *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003).

In accordance with this authority, Gaut will be precluded from testifying that the use of force was "reasonable" for the purposes of the Fourth Amendment. Furthermore, insofar as Gaut indisputably lacks expertise in medicine and its related fields, he will also be precluded from offering opinions regarding the scientific connection between a prone-restraint and positional asphyxia, or assessments or characterizations of the scientific literature on positional asphyxia. However, Gaut may opine that the force used by members of the Southaven Police Department was in keeping with law enforcement standards—with the caveat that he not offer any of his opinions on the scientific literature or the connection between a prone-restraint and positional asphyxia. *See Hopkins v. City of Huntsville*, No. CV-13-429, 2014 WL 5488403, *12 (N.D. Ala. Oct. 29, 2014) ("The expert opinion of Dr. Gaut on the issue of whether defendants' actions and policies were consistent with reasonable, typical police practices and procedures is admissible ….").

### D. Opinion #4

Kelli submits that Gaut is not qualified to comment on the adequacy of the actions of the Southaven Fire Department/EMS because he has "no knowledge, skills, education, or training … in emergency medicine or emergency medical services," and as a police officer he merely supervised the "business aspects of the [EMS] department." Doc. #477 at 5–6. The Southaven Defendants respond that Gaut possesses the "education, training and experience in the field of medical investigation" to opine on the conduct of Southaven EMS personnel, as he was involved

9

in the "regulation of all EMS personnel services in the City of Birmingham, Alabama." Doc. #462 at 7. The Southaven Defendants also note Gaut's "Level III Certification" and his membership in various organizations related to forensic sciences. *Id*.

Gaut's purported qualifications merely reflect that he was a high-level police officer who managed aspects of EMS services, rather than demonstrating knowledge, skills, education, or training in emergency medicine. As Kelli points out, the Southaven Defendants do not describe the accrediting organization of Gaut's "Level III certification" or elucidate its significance—and his curriculum vitae does not list such pertinent information either. Doc. #413-1 at 50; Doc. #477 at 6–7. Moreover, the Mississippi Supreme Court has described two of the forensic science accrediting bodies of which Gaut is a member—the American Academy of Forensic Science and the American College of Forensic Examiners—as "pay your money, get your certification" organizations. Doc. #477 at 7 (quoting *Edmonds v. State*, 955 So.2d 787, 803 (Miss. 2007) (internal quotation marks omitted). The Southaven Defendants have thus failed to demonstrate that Gaut is qualified to offer opinions on the standard for generally accepted emergency services. Given his lack of EMS experience or training, Gaut will be precluded from offering this opinion. *See Watkins v. Action Care Ambulance, Inc.*, No. 07-CV-02598, 2011 WL 4017986, at *5 (D. Colo. Sept. 9, 2011) (excluding psychiatrist's expert testimony regarding the standard of care for EMTs because proponent failed to establish his qualifications).

### E. Opinion #5

Kelli argues Gaut's opinion that the Southaven Defendants did not engage in "unconstitutional practices" contains impermissible legal conclusions. Doc. #413 at 10; Doc. #477 at 8.

"A determination that a defendant's conduct constitutes a constitutional violation is a legal

conclusion." *Munn v. City of Ocean Springs*, No. 1:14CV428, 2016 WL 9779797, at *5 (S.D. Miss. Apr. 13, 2016) (quoting *Jones v. Slay*, No. 4:12-cv-2109, 2014 WL 2804407, at *11 (E.D. Mo. June 20, 2014)). Similarly, the opinion of an attorney and purported expert in law enforcement practices and procedures "that [police] Defendants did not violate Plaintiffs' constitutional rights" offers "a legal opinion or conclusion, and as such, is inadmissible." *Jarrow v. Cupit*, No. CIV.A.99-3539, 2000 WL 1537989, at *1–2 (E.D. La. Oct. 17, 2000). Accordingly, Gaut's opinion on the constitutionality of the Southaven Defendant's conduct will be excluded as an impermissible legal conclusion. *See Munn*, 2016 WL 9779797, at *5 (collecting cases).

### F. Opinion #6

Kelli argues Gaut's opinion that the Southaven Defendants did not commit "acts of reckless disregard" contains impermissible legal conclusions. Doc. #413 at 10. The Southaven Defendants respond that Gaut will not offer an impermissible legal conclusion but will instead properly rely on his knowledge of constitutional law—as he has done in past cases. Doc. #462 at 7–8.

Gaut will be precluded from offering this opinion because it states a legal conclusion in opining about whether police acted with reckless disregard towards Troy. *Flock v. Scripto-Tokai Corp.*, No. CIV.A. H-00-3794, 2001 WL 36390120, at *1 (S.D. Tex. Sept. 28, 2001) (precluding expert from "proffer[ing] testimony stating a legal conclusion, *e.g.*, using language specifically stating that … any party 'acted with … reckless disregard'"); *see Hagan*, 2016 WL 1091107, at *6 ("This conclusory opinion is of the type that is not permitted by Rule 704 because it is for the jury to judge the credibility of a witness and render a fact determination on … intent, based upon proper instruction on the law from the Court.").

### IV
### Conclusion

Kelli's motion to exclude [407] is **GRANTED in Part** and **DENIED in Part**. It is

DENIED to the extent Gaut may opine that the force used by members of the Southaven Police Department was in keeping with law enforcement standards (so long as he does not offer any of his opinions on the scientific literature or the connection between a prone-restraint and positional asphyxia). It is GRANTED in all other respects.

**SO ORDERED**, this 27th day of September, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**