**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**KELLI DENISE GOODE, Individually, and also as the Personal Representative of Troy Charlton Goode, Deceased, and as Mother, Natural Guardian, and Next Friend of R.G., a Minor, and also on behalf of all similarly situated persons** — **PLAINTIFF**

**V.** — **NO. 3:17-CV-60-MPM-RP**

**THE CITY OF SOUTHAVEN, et al.** — **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SANCTIONS AND SETTING ASIDE PRIOR ORDER**

This cause comes before the Court on defendants' *Joint Motion to Dismiss or, in the Alternative, for Other Sanctions (Renewed)*. Doc. #587.

## I
## Relevant Background and Procedural History

On January 13, 2016, Kelli Denise Goode—individually, and in her capacity as the personal representative of her deceased husband, as next friend of her minor son, and on behalf of "all similarly situated persons"—filed a complaint in the United States District Court for the Western District of Tennessee[1] "seek[ing] damages and injunctive relief based upon the untimely death of [her husband] Troy Charlton Goode …." Doc. #1 at 1–2.

[1] On March 31, 2017, this action was transferred from the Western District of Tennessee to the Northern District of Mississippi–Oxford Division. Doc. #246. The transfer was effectuated "in the interest of justice" pursuant to 28 U.S.C.§ 1406(a) because the Northern District of Mississippi "is the location of sources of relevant proof, and Mississippi has an interest in deciding this Mississippi-centric action." Doc. #245 at 27–28. Although the transferor court determined that some claims were "properly venued" in the Western District of Tennessee, it found that "transfer of the entire action to the transferee district avoids the piecemeal litigation and unnecessary duplication of fees and costs that would result from a fragmentation of claims in two separate lawsuits." *Id*. at 28 (internal quotation marks omitted).

On August 15, 2016, Kelli,[2] in the same capacities as named in her original complaint, filed an amended complaint, naming as defendants the City of Southaven, Todd Baggett, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham, Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, Richard A. Weatherford; John Does 1-10; Baptist Memorial Hospital-Desoto ("BMH-D"); Southeastern Emergency Physicians, Inc.;[3] and Lemuel D. Oliver, M.D. Doc. #107. In her amended complaint, Kelli asserts numerous state and federal claims against the defendants regarding Troy's death on July 18, 2015. *Id.* at 35–62. On that day, Troy and Kelli drove to Southaven from Memphis, Tennessee to attend a Widespread Panic concert, but before the concert started "Troy came under the influence and commenced to exhibit fear and paranoia." *Id.* at 13. Troy encountered Southaven police after leaving the concert venue to drive back to Memphis with Kelli and was detained and brought to BMH-D, where he died. *Id.* at 13, 26–27.

**A. Kelli's Creation of Timelines**

Before filing suit, Kelli prepared two timelines of the events of July 18, 2015 that she e-mailed to her attorneys Kevin McCormack, Tim Edwards, and paralegal Diane Asbridge on August 11, 2015. Doc. #587-2; Doc. #587-4. According to both timelines, on July 18, 2015, "Troy smoked [marijuana] at home (a joint); from a batch he had previously smoked from; no issues." Doc. #587-2; Doc. #587-4. The documents also state that Troy was "a daily smoker" of marijuana, which he "purchase[d] from the same person." Doc. #587-2; Doc. #587-4. Regarding the LSD consumed by Troy, the timelines state that "Mike Friedman had same vile [sic] over a year" and that "Troy used LSD on paper previously while in Chicago from same vile [sic]."[4] *Id.* Kelli's

[2] To avoid confusion, the Goodes' first names will be used.

[3] Southeastern Emergency Physicians, LLC (previously identified as Southeastern Emergency Physicians, Inc.) was dismissed with prejudice from this case by stipulation on May 9, 2018. *See* Doc. #496.

[4] Kelli testified that she and Troy attended a concert in Chicago on July 4, 2015. Doc. #587-8 at 217.

second timeline also describes Troy escaping from an automobile and being chased by his friend Andrew Kratzke on foot and Kelli by car from the concert venue to Goodman Road. Doc. #587-4 at 3.

The timelines were provided to the defendants during discovery. *See* Doc. #587-15 at 2.

**B. Kelli's Response to Interrogatories and Requests for Production**

Oliver propounded his first set of interrogatories and requests for production on August 25. 2016. Doc. #133. Oliver asked Kelli to identify any healthcare provider who had treated Troy in the past ten years ("interrogatory two") and the name and source of any illegal drugs Troy had taken in the last ten years ("interrogatory six"). Doc. #587-5 at 2, 4–5. Oliver also requested documents or records—whether medical, criminal, legal, or otherwise—of any prior reaction by Troy to LSD ("request for production thirty-two"), along with contact information for those that had provided Troy illegal drugs ("request for production thirty-three"). Doc. #587-6 at 11.

On September 27, 2016,[5] Kelli served her answers and responses to Oliver's discovery requests. Doc. #587-5 at 7; 587-6 at 16. In her answer to interrogatory two,[6] Kelli provided the names and addresses of a physician, dentist, pediatrician, pharmacy, and pharmacy clinic. Doc. #587-5 at 2. Kelli's answer did not disclose that Troy was transported by EMS and then hospitalized in 2008 and again in 2013.

[5] Kelli's answers to Defendant Oliver's first set of interrogatories were served on September 27, 2016, Doc. #587-5 at 7, but were notarized on September 28, 2016, Doc. #587-5 at 6.

[6] Kelli objected to interrogatory two as "[o]verly broad and unduly burdensome," and answered without waiving her objection. Doc. #587-5 at 2.

In her answer to interrogatory six,[7] Kelli answered that Troy "was an infrequent user of LSD and marijuana. He sought no treatment nor was treatment necessary. The source or sources of supply are unknown." Doc. #587-5 at 5.

In response to requests for production thirty-two and thirty-three[8], Kelli did not produce the timeline or medical records, responding that she was "in possession of no responsive documents and believes that none exists." Doc. #587-6 at 11.

### C. Kelli's Deposition

Kelli was deposed on November 15, 2016. Doc. #587-8 at 1, 257. Kelli testified that, besides the 2015 BMH-D and the 2008 admissions, Troy was not hospitalized at any time.[9] Kelli did not disclose the 2013 hospitalization. *See* Doc. #587-15 at 2.

Kelli represented that she did not know whether Troy ingested LSD in 2015 apart from July 18 in Southaven, testifying that to her knowledge it had been "years" since Troy consumed LSD in "liquid" form. Doc. #587-8 at 203, 205. Regarding occasions when Troy had consumed LSD, Kelli testified: "It was long ago. We were young. It could have been at Bonnaroo [before married to Troy]." *Id.* at 204. Kelli testified that she could not remember whether Troy had ingested LSD during their visit to Chicago for a concert on July 4th weekend of 2015. *Id.* at 217.

Kelli initially testified that she did not know either where Troy received the LSD he ingested on the day he died or whether other members of their group used illegal drugs that day.

---

[7] Kelli objected to interrogatory six as "exceed[ing] the scope of discovery by Fed. R. Civ. P. 26," and answered without waiving her objection. Doc. #587-5 at 5.

[8] "Request No. 32: Please Produce a copy of any and all documents or records, whether medical, criminal, legal or otherwise, concerning any prior reaction by decedent to LSD."; "Request No. 33: Please produce a list of contact information for any and all persons from whom Plaintiff and/or decedent ever purchased or were given illegal or illicit drugs, including, but not limited to marijuana and LSD." Doc. #587-6 at 11.

[9] "Q: I want to ask you a few questions about Mr. Goode's health history prior to July 18, 2015. Other than the hospitalization that you've mentioned in 2008 associated with his use of LSD, are you aware of any other hospitalizations that Mr. Goode had? A: No." Doc. #587-8 at 146:2-7.

*Id*. at 20–21. When confronted with a letter[10] written by her expert Cyril Wecht, which stated that Kelli witnessed Troy's group taking LSD in a circle, Kelli responded that she

> did not see the actual taking of it because … I was putting our trash back into a car. When I looked up, I saw the circle. I did not see them take LSD. Troy told me after that he did take the LSD. So that would be me putting two and two together.

*Id*. at 134–35.

Kelli initially denied that Troy smoked marijuana at their home the day he died, testifying that Troy smoked at a friend's house. Doc. #587-8 at 21. When confronted with Wecht's letter, which stated that Troy had smoked marijuana at their home the day he died, Kelli responded: "It's likely, but I don't remember." *Id*. at 131. As to the remainder of Troy's marijuana batch, Kelli testified that: (1) she "believe[d]" Troy stored marijuana in a storage shed outside of their house; (2) she did not search for his marijuana after his death; (3) the marijuana was "not there anymore"; (4) someone besides Kelli had removed the marijuana; and (5) Kelli did not know that there was marijuana, or any other drugs, stored in the shed. *Id*. at 215–16, 220–22.

Kelli initially testified that she drove Troy from the venue without incident until he exited the vehicle while it was stopped near the grassy area where Troy was apprehended. *Id*. at 13–15. When confronted with Wecht's letter—which described Troy as escaping and being chased by Andrew Kratzke (on foot) and Kelli (by car) to the grassy area where he was detained—Kelli testified that Troy merely exited the vehicle twice on the grassy area itself and was then followed by Kelli and Andrew. *Id*. at 15–18. However, Kelli maintained that Troy did not attempt to exit her vehicle until it had come to a stop on Goodman Road where Troy was detained. *Id*. at 143.

[10] According to the movants, "BMH-D inadvertently discovered this letter prior to Mrs. Goode's deposition through a subpoena to Sun Life Assurance Company." Doc. #418 at 20 n.39.

**D. Post-Discovery Motions**

After an extensive period of discovery, BMH-D filed a joint motion on behalf of all defendants to dismiss or, in the alternative, for other sanctions, based on Kelli's inconsistent accounts of relevant facts during discovery. Doc. #587. On September 11, 2018, Judge Brown denied the joint motion to dismiss or, in the alternative, for sanctions without prejudice and ordered the parties to file a renewed motion addressing whether the Court's inherent authority and/or the authority of Rule 37 should be applied to the issues raised, and then analyzing such issues accordingly. Doc. #586 at 7. A week later, the defendants filed a renewed motion which complied with the Court's September 11, 2018, order. Doc. #587.

On September 27, 2018, Judge Brown entered an order finding that Kelli engaged in bad faith conduct during this litigation, but also that "Kelli's conduct does not rise to the level warranting the sanction of dismissal of her claims or the imposition of any of the specific alternative sanctions requested by the defendants in their renewed motion for sanctions." Doc. #591 at 3. Instead of the sanctions proposed by the defendants, Judge Brown determined that the appropriate sanction to impose "is to deem certain facts admitted against Kelli, with such facts to be specifically determined following specific briefing on the issue, which briefing may include any additional alternative sanction not yet rejected by the Court." *Id*.

Accordingly, the renewed motion for sanctions was denied in part and deferred in part, and the defendants were given seven days to file a supplement to the renewed motion—with any response from Kelli due seven days later. *Id*. at 4. On October 4, 2018, defendants filed the supplement to the renewed motion, Doc. #598, along with a memorandum in support, Doc. #599. A week later, Kelli filed her response in opposition, Doc. #600, along with a memorandum in support, Doc. #601.

Judge Brown recused herself from this case on December 20, 2018 and it is now before this Court.

## II
## Analysis

The defendants argue that Kelli

> [i]n a calculated attempt to further her own interests and conceal the truth … engaged in a concerted effort to mislead and withhold material, relevant information. … In so doing, she has subverted the judicial process, prejudiced the … defense of this matter, and damaged the integrity of this matter and the Court.

Doc. #588 at 2. Specifically, the defendants contend that Kelli engaged in bad faith conduct when she: (1) contradicted her timelines in her response to Oliver's request for production, which stated she was not in possession of a list of contact information for those who provided drugs to Troy; (2); contradicted her timelines in her answer to one of Oliver's interrogatories, which stated that Troy was an "infrequent" user of marijuana; (3) failed to produce records of Troy's 2008 and 2013 EMS transports and hospitalizations in response to Oliver's request for records—whether medical, criminal, legal, or otherwise—of any prior reaction by Troy to LSD; (4) failed to disclose Troy's 2013 hospitalization in her deposition; (5) contradicted her second timeline with her deposition testimony describing Troy's departure from the concert venue on July 18, 2015; (6) contradicted her timelines with her deposition testimony that it had been "years" since Troy consumed LSD in liquid form; and (7) contradicted her timelines with her deposition testimony that Troy had only smoked marijuana at a friend's house on July 18, 2015. *Id.* at 2–8.

### A. Finding of Bad Faith

"Federal courts have undisputed, inherent power to regulate practice in cases pending before them." *Carroll v. Jaques*, 926 F. Supp. 1282, 1288 (E.D. Tex. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "The inherent power is not a broad reservoir of power,

ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) (internal quotation marks omitted). It is "interpreted narrowly, and its reach is limited by its ultimate source—the court's need to orderly and expeditiously perform its duties." *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002).

"The imposition of sanctions using inherent powers must be accompanied by a specific finding of bad faith." *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999). Bad faith conduct requires clear and convincing evidence of a "fraudulent intent and a desire to suppress the truth." *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006). In this regard, a plaintiff's "knowingly false representation constitutes an abuse of the judicial process that warrants [inherent powers] sanctions." *Raniere v. Microsoft Corp.*, No. 3:15-CV-0540, 2016 WL 4626584, at *5 (N.D. Tex. Sept. 2, 2016), *aff'd*, 887 F.3d 1298 (Fed. Cir. 2018).

*1. Extent and Frequency of Troy's Consumption of Illicit Drugs*

While Kelli never denied that Troy was a consumer of LSD and marijuana, the Court finds that she lied about the extent and frequency of her husband's drug use. For example, Kelli stated that Troy was a "daily" marijuana smoker in the timelines yet stated that he was an "infrequent" user of the drug in an interrogatory answer, which presents an irreconcilable discrepancy. Doc. #587-2 at 1; Doc. #587-4 at 2; Doc. #587-5 at 5. Kelli's deposition testimony that Troy had only smoked marijuana at a friend's house on July 18, 2015—also contradicted by her timelines—reflects a fraudulent intent to suppress the truth as Kelli made no reference to Troy smoking at home in her deposition until she was confronted with the timelines. Doc. #587-2 at 1; Doc. #587-4 at 2; Doc. #587-8 at 21, 130–31. Comparing Kelli's candid disclosures to her counsel in the

timelines with her evasive answers in discovery indicates a fraudulent intent to suppress the truth regarding the extent and frequency of Troy's drug use.

"Standing alone, a false or inconsistent statement in a deposition does not compel the conclusion of bad faith." *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir.2011); *see also Cenveo Corp. v. S. Graphic Sys., Inc.*, No. CIV. 08-5521, 2010 WL 3893680, at *6 (D. Minn. June 18, 2010), *report and recommendation adopted*, No. CIV. 08-5521, 2010 WL 3893709 (D. Minn. Sept. 30, 2010) ("authority support[s] the proposition that perjury must be proven definitively before a Court can exercise its inherent authority to levy sanctions that preclude the jury from reaching its own conclusion as to the [deposition] testimony"). However, "[a] false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose." *Id*. Here, there is other evidence in the record to support a finding that Kelli's inconsistent deposition testimony—which changed after she was confronted with her timelines during her deposition—is part of the same pattern of sanctionable fraudulent intent given the shared nexus to the timelines among all sanctionable conduct. *See, e.g.*, *Alexander v. Caraustar Indus., Inc.*, 930 F. Supp. 2d 947, 961 (N.D. Ill. 2013) (imposing sanction of dismissal pursuant to inherent authority for, among other things, lying in a deposition before making a reluctant concession when confronted with falsehood).

*2. Troy's History of LSD Consumption*

The Court finds that Kelli made a knowingly false statement on the topic of Troy's LSD consumption which warrants sanctions. Although Kelli's timeline reflected that Troy ingested LSD at least once in the past year, she testified in her deposition that it had been years since Troy ingested LSD and intimated that his last dose was prior to their marriage. Doc. #587-2 at 1; Doc.

#587-4 at 2; Doc. #587-8 at 205. Kelli attempts to account for this discrepancy by claiming confusion about whether the LSD Troy consumed was in liquid or paper form—which the Court finds to be a distinction without a difference. Thus, the Court finds that Kelli made a knowingly false misrepresentation about Troy's history of LSD consumption, as her characterizations of Troy's history of LSD use in her deposition is contradicted by her timelines.

### *3. Troy's Departure from the Concert Venue*

Further, the Court finds that Kelli made a knowingly false statement on the topic of Troy's departure from the concert venue. In her second timeline, Kelli describes how Troy bolted from her vehicle more than once before it came to a complete stop on Goodman Road, with Troy's friend Andrew Kratzke chasing him on foot; such details were initially omitted from Kelli's deposition testimony before she was confronted with the timeline. Doc. #587-4 at 3; Doc. #487-8 at 15, 138–140. The manner of Troy's departure from the concert venue evidences Troy's state of mind before his confrontation with Southaven police, and the Court finds that Kelli, through shifting accounts of Troy's departure, made a knowingly false misrepresentation on this subject.

### *4. List of those who Supplied Illicit Drugs to Troy*

The Court finds that Kelli's failure to produce a list of those who supplied drugs to Troy does not warrant sanctions. Federal Rule of Civil Procedure 34 "only requires a party to produce documents that are already in existence [and a] party is not required to prepare, or cause to be prepared, new documents solely for their production." *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000) (internal quotation marks omitted). Given her assertion that "[n]o such list exists, and Defendants have presented no evidence otherwise," Kelli is correct that failing to produce a non-existent list is not sanctionable conduct.

### 5. *Troy's Prior Hospitalizations*

It is likely that Kelli exhibited a fraudulent intent to suppress the truth regarding her discovery responses on Troy's prior hospitalizations in 2008 and 2013. However, the defendants have been aware of Troy's 2008 LSD-related incident since the onset of this case due to an article in the Memphis Commercial Appeal. Furthermore, Kelli signed a full HIPAA release without objection, which this Court finds to be inconsistent with a fraudulent intent to suppress the truth.[11] Indeed, the defendants used this information "to obtain Troy's medical records from his insurer and from all the medical providers who treated him, including all medical records related to the 2008 and 2013 incidents" in the normal course of discovery. Doc. #601 at 6–7.

## B. Assessment of Sanctions

The defendants seek the following sanctions: (1) that facts regarding the events of July 18, 2015 be deemed admitted; (2) that facts and records pertaining to Troy's LSD-related 2008 and 2013 incidents, previously excluded by the Court under Federal Rule of Evidence 403, be deemed admitted; and (3) that the jury be informed "that the facts and records are being admitted as a sanction for the bad faith conduct of Mrs. Goode." Doc. #599 at 2, 6–8. Kelli submits that "the Court should reject Defendants' request for additional sanctions and carefully tailor any admission of fact to avoid imposing an unduly severe sanction" because none of the facts "allegedly concealed have any relevance to the issue of the civil rights violations and medical malpractice at issue in this case …." Doc. #601 at 1–2, 3. Accordingly, Kelli seeks to change the wording of some of the facts sought to be deemed admitted that pertain to Troy's drug use and the events of

[11] "[T]he HIPAA regulations allow health care providers to disclose patient health information in connection with judicial proceedings: (1) in response to an order of the court, but only to the extent allowed by the language of the order; or (2) in response to a subpoena or formal discovery request where the requesting party assures the provider that either the patient was made aware of the request but did not object or the requesting party has made reasonable efforts to secure a proper protective order." *Rodriguez v. City of New Brunswick*, No. CV 12-4722, 2017 WL 5598217, at *7 (D.N.J. Nov. 21, 2017).

July 18, 2015, and to entirely exclude facts and records pertaining to Troy's previous LSD-related incidents as well as the defendants' proposal that the jury be informed of Kelli's bad faith conduct. Doc. #601 at 11–20.

*1. Facts Deemed Admitted*

The Fifth Circuit mandates that any sanction imposed by a district court consider the following factors on a sliding scale: "(1) What conduct is being punished or is sought to be deterred by the sanction?"; "(2) What expenses or costs were caused by the violation of the rule?"; "(3) Were the costs or expenses 'reasonable,' as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?"; and "(4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?" *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993) ("*Topalian I*") (citing *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877–79 (5th Cir. 1988)). Although *Thomas* laid out this framework in the context of Rule 11 sanctions, these four considerations "apply across-the-board to all of the district court's sanction powers." *Topalian I*, 3 F.3d at 936 n.5. However, prongs two and three only apply where a party seeks monetary sanctions. *Topalian v. Ehrman*, 84 F.3d 433 (5th Cir. 1996) ("*Topalian II*"). As the defendants have not sought monetary sanctions, costs, or fees, the Court will only assess factors one and four.

Under the first prong, "[i]t is axiomatic that the court must announce the sanctionable conduct giving rise to its order." *Id*. As discussed above, Kelli has offered sworn statements throughout this litigation that are, at best, deficient and misleading and, at worst, knowingly false. First, Kelli lied about the extent and frequency of Troy's LSD and marijuana use. Second, Kelli lied about the manner of Troy's departure from the concert venue on July 18, 2015. Third, Kelli failed to disclose information regarding Troy's prior hospitalizations. As such, the Court has no

difficulty concluding that Kelli has engaged in sanctionable conduct through a fraudulent intent to suppress the truth in this case.

Turning to the fourth prong, "district courts must demonstrate that sanctions are not vindictive or overly harsh reactions to objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision." *Topalian I*, 3 F.3d at 937. The Court agrees with the defendants that deeming facts admitted as to the events of July 18, 2015, "is a tailored sanction … directly related to the underlying bad faith conduct" that penalizes Kelli by introducing into evidence fact which she arguably sought to exclude from the record. Doc. #599 at 4. The Court also credits Kelli's argument that "the conduct at issue … involves responses to extremely broad discovery requests and deposition testimony provided by a litigant with minimal experience in the law" who was coping with the death of her husband. Doc. #601 at 4.

*2. Jury Instructions*

The Court has previously rejected a negative inference jury instruction and a finding of fraud at trial, Doc. #591 at 3 n.3, and Kelli argues that the "Defendants now request the same relief, worded slightly differently [that] the Court 'inform the jury that the facts and records are being admitted as a sanction for the bad faith conduct of Mrs. Goode[,]'" Doc. #601 at 12.

> Defendants' request, in essence, is that the jury be informed that Plaintiff has acted in bad faith in discovery and that adverse actions are appropriate against her. The effect of informing the jury of Kelli's bad faith conduct would be the exact same as the previous instructions already rejected by the Court.

*Id.*

The Court agrees. Defendants may, of course, impeach Kelli about her candor and the inconsistencies in her submissions, and the jury may assess her credibility on these fronts without the Court formally reaching a conclusion for the jury.

### C. Facts Deemed Admitted

Below are the requested facts to be deemed admitted by the defendants that have not been excluded by the Court above, along with Kelli's response, and the Court's final phrasing. The Court notes, however, that despite these facts being deemed admitted they are, nonetheless, still subject to all proper admissibility objections. *See Corbett v. Tejas Tongs, Inc.*, 146 F.3d 867 (5th Cir. 1998).

*1. Proposed Fact #1*

Defendants propose that the following fact be admitted: "Mr. Goode smoked marijuana at his home on July 18, 2015, from a batch of marijuana that he had previously smoked from." Doc. #599 at 8. As Kelli does not object to this wording in her response, this fact will be adopted as proposed by the defendants.

*2. Proposed Fact #2*

Defendants propose that the following fact be admitted: "Mrs. Goode knew that Mr. Goode smoked marijuana at his house." *Id*. In response, Kelli "requests that the words 'believes' be substituted for the word 'knew' to accurately reflect Ms. Goode's testimony." Doc. #601 at 18. The Court agrees with Kelli that inserting the word "believes" would accurately reflect her deposition testimony that she did not witness Troy smoking marijuana. Accordingly, the fact deemed admitted is: Mrs. Goode believes that Mr. Goode smoked marijuana at his house.

*3. Proposed Fact #3*

Defendants propose that the following fact be admitted: "Mr. Goode smoked two (2) joints of marijuana with Adam Friedman, Taylor Tanner and Zach Hanson at the home of Taylor Tanner from a batch of marijuana he had previously smoked from." Doc. #599 at 8. As Kelli does not object to this wording in her response, this fact will be adopted as proposed by the defendants.

*4. Proposed Fact #4*

Defendants propose that the following fact be admitted: "Mr. Goode and five other individuals gathered in a circle and used liquid LSD outside of the concert venue on July 18, 2015." *Id*. In response, Kelli "requests that the word 'approximately' be inserted before the word 'five' to accurately reflect Ms. Goode's testimony." Doc. #601 at 19. The Court agrees with Kelli that inserting the word "believes" would accurately reflect her deposition testimony that she did not witness Troy smoking marijuana. Accordingly, the fact deemed admitted is: "Mr. Goode and approximately five other individuals gathered in a circle and used liquid LSD outside of the concert venue on July 18, 2015."

*5. Proposed Fact #5*

Defendants propose that the following fact be admitted: "Mike Friedman provided the LSD that Mr. Goode used on July 18, 2015." Doc. #599 at 8. In response, Kelli "requests that the Court insert the words 'Ms. Goode believes' at the beginning of this statement to accurately reflect the uncertainty about this fact and to avoid making a judicial declaration that Mr. Friedman committed a crime." Doc. #601 at 19. The Court agrees with Kelli that inserting the word "believes" would accurately reflect her deposition testimony that she did not witness Troy consume LSD. Accordingly, the fact deemed admitted is: Ms. Goode believes Mike Friedman provided the LSD that Mr. Goode used on July 18, 2015."

*6. Proposed Fact #6*

Defendants propose that the following fact be admitted: "Mike Friedman had the vile [sic] of LSD for over a year and Mr. Goode previously used the same LSD on paper while in Chicago, Illinois." Doc. #599 at 8. In response, Kelli "requests the Court insert the words 'Ms. Goode believes' at the beginning of the statement to accurately reflect the uncertainty about this fact and

to avoid making a judicial declaration that Mr. Friedman committed a crime." Doc. #601 at 19. The Court agrees with Kelli that inserting the word 'believes' would accurately reflect her understanding of the LSD vial alleged to be in Friedman's possession. Accordingly, the fact deemed admitted is: Ms. Goode believes that Mike Friedman had the vial of LSD for over a year and Mr. Goode previously used the same LSD on paper while in Chicago, Illinois.

*7. Proposed Fact #7*

Defendants propose that the following fact be admitted: "Mr. Goode exited the vehicle at the concert venue and traveled on foot to a Kroger parking lot on Goodman Road with Andrew Kratzke following him on foot and Mrs. Goode in a vehicle." Doc. #599 at 8. As Kelli does not object to this wording in her response, this fact will be adopted as proposed by the defendants.

*8. Proposed Fact #8*

Defendants propose that the following fact be admitted: "Mr. Goode entered the car again at or near the Kroger parking lot on Goodman Road." *Id*. As Kelli does not object to this wording in her response, this fact will be adopted as proposed by the defendants.

*9. Proposed Fact #9*

Defendants propose that the following fact be admitted: "Thereafter, while Mrs. Goode was driving on Goodman Road, Mr. Goode jumped out of the vehicle while it was moving." *Id*. In response, Kelli "requests that Court inserts the words 'barely' before the word 'moving' to accurately reflect the information timeline submitted by the Defendants in support of this fact." Doc. #601 at 19. The Court will insert the words "at a low rate of speed" to accurately describe the contents of Kelli's timeline, as it considers "barely" to be a characterization. Accordingly, the fact deemed admitted is: Thereafter, while Mrs. Goode was driving on Goodman Road, Mr. Goode jumped out of the vehicle while it was moving at a low rate of speed.

*10. Proposed Fact #10*

Defendants propose that the following fact be admitted: "Mr. Goode was a daily smoker of marijuana" Doc. #599 at 8. In response, Kelli "requests the Court insert the words 'at certain times prior to his death' at the beginning of this statement to accurately reflect the uncertainty about this fact and the variation in Troy's use of marijuana." Doc. #601 at 20. The Court agrees with Kelli that the words "at certain times prior to his death" and "according to Kelli" should be inserted to accurately reflect the contents of Kelli's deposition testimony that Troy's marijuana use varied but that at times he was a daily smoker. Accordingly, the fact deemed admitted is: According to Kelli, at certain times prior to his death, Mr. Goode was a daily smoker of marijuana.

*11. Proposed Fact #11*

Defendants propose that the following fact be admitted: "Mr. Goode purchased his marijuana from the same person." Doc. #599 at 8. As Kelli does not object to this wording in her response, this fact will be adopted as proposed by the defendants.

*12. Proposed Fact #12*

Defendants propose that the following fact be admitted: "Following his death, Mrs. Goode was in possession of the remainder of Mr. Goode's marijuana that he smoked on July 18, 2015." *Id* . As Kelli does not object to this wording in her response, this fact will be adopted as proposed by the defendants.

**D. Prior Hospitalizations and Other Incidents**

Although this Court gives great deference to Judge Brown's prior rulings in this case, it has, nonetheless, on its own motion, reconsidered her previous order in which she ruled that Troy's prior LSD-related incidents and other matters should be excluded, Doc. #596. Having reviewed the Pretrial Order, which was signed and agreed to by all parties—but not yet entered by this Court,

it is the Court's opinion, at this time, that issue #45 ("Does Troy Goode's own wrongful conduct prohibit any possible recovery under Mississippi law?") may make proof of Troy's prior incidents of hospitalization and other matters addressed in the previous order possibly relevant and possibly admissible. Therefore, the Court, at this time, will set aside Judge Brown's prior order, Doc. #596. However, the Court notes that this evidence is once again subject to all evidentiary objections that may be brought at a later date. Additionally, this Court retains the right to issue new sanctions regarding Plaintiff's failure to disclose these prior incidents should the Court deem such sanctions necessary and appropriate.

## III
## Conclusion

Accordingly, the defendants' motion [Doc. #587] is **GRANTED in part** and **DENIED in part**. It is granted to the extent that the facts listed in Section IIC of this memorandum opinion shall be deemed admitted; it is denied in all other regards. Additionally, this Order sets aside Judge Brown's previous Order [Doc. #596] which excluded proof of Troy's prior hospitalization incidents and other matters. The Court gives the parties fourteen (14) days from the issuance of this Order to file their summary judgment motions.

**SO ORDERED**, this 6th day of March, 2019.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**