UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

KELLI DENISE GOODE, Individually,
and also as the Personal Representative
of Troy Charlton Goode, Deceased, and                                    PLAINTIFF
as Mother, Natural Guardian, and Next
Friend of R.G., a Minor, and also on
behalf of all similarly situated persons

V.                                                                NO. 3:17-CV-60-MPM-RP

THE CITY OF SOUTHAVEN, et al.                                           DEFENDANTS

## ORDER

This cause comes before the Court on Plaintiff's motions in limine [507] [509] [511] [513].

**Motion in Limine Standard**

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (internal citations omitted). When ruling upon motions in limine, the Court notes that "[e]vidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Id*. Rulings on a motion in limine "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

**A. Plaintiff's motion in limine [507] to preclude Defendants from offering or introducing collateral source evidence**

This motion, filed on June 6, 2018 by Kelli requests:

> that counsel for Defendants, and through such counsel any and all Defendants' witnesses, be instructed by an Order of this Court to refrain from making any comments or suggestions to jurors in voire dire examination, opening statements or closing arguments, or by interrogation of Defendants'

> witnesses and statements of Defendants' witnesses, or cross-examination of Plaintiff and Plaintiff's witnesses, regarding collateral source evidence.

On June 14, 2018, Defendant Oliver, filed a response in opposition. The Court finds that there appears to be a potential conflict of law regarding the collateral source rule that bears upon the determination of this motion. Thus, the parties must confer with one another regarding whether the Mississippi or Tennessee collateral source rule applies to this case. To the extent the parties can agree on which law controls, they should represent to the Court what that law is; to the extent the parties disagree on which law controls, they must brief the issue for the Court's determination.

This motion [507] is **DENIED without prejudice**.

**B. Plaintiff's motion in limine [509] to preclude Defendants from offering or introducing evidence of prior drug use by friends of Troy Goode and that Troy Goode manufactured drugs**

In the instant motion, filed June 6, 2018, Kelli requests

> that counsel for Defendants, and through such counsel any and all Defendants' witnesses, be instructed by an Order of this Court to refrain from making any comments or suggestions to jurors in voire dire examination, opening statements or closing arguments, or by interrogation of Defendants' witnesses and statements of Defendants' witnesses, or cross-examination of Plaintiff and Plaintiff's witnesses, regarding prior drug use by any friends of Troy Goode who have been deposed in this cause. This motion also seeks to exclude any questions or arguments of defense counsel intimating that Troy Goode was a drug manufacturer.

On June 14, 2018, Defendant Oliver filed a response in opposition.

Several of Troy's friends were deposed about their drug use. Doc. #510 at 2. Kelli argues that such evidence must be excluded under Federal Rules of Evidence 401 and 402 or, alternatively, under Federal Rules of Evidence 403 or 404(a). *Id*. Regarding Rules 401 and 402, Kelli argues that "[a]bsent proof that there is a connection between Troy's death as a result of being hog-tied and the drug use of his friends (which there is none), the use of drugs by Troy's friends on occasions prior to the date of the incident is simply irrelevant to any issue in this

proceeding ...." *Id*. Kelli argues "[i]n the alternative [that] questions regarding the prior drug use of those witnesses should be excluded as being confusing, misleading, and unfairly prejudicial" under Rule 403. *Id*. Lastly, Kelli contends that any such testimony "is inadmissible character evidence" under Rule 404(a). *Id*.

While Oliver "does not intend to offer" evidence that Troy manufactured drugs, *id*. at 3, he argues that the motion should be denied in all other respects, *id*. at 1. Accordingly, the Court is left to assess whether this motion should be granted as to evidence of Troy's friends' drug use.

Oliver offers three reasons why the motion should be denied: (1) drug use "in the presence or company of Mr. Goode is relevant and admissible to demonstrate the extent of Mr. Goode's drug usage and the careless actions of him as well as those around him in engaging in risky and illegal behavior"; (2) because Oliver's answer to the amended complaint raises a defense that Troy's friend Mike Friedman, or whoever provided LSD to Troy on July 18, 2015, "is the sole and/or contributing cause" of Troy's injury, "Oliver has the right to put forth the proof necessary to assert this defense which includes proof of Mr. Friedman and others supplying LSD to Troy Goode on July 18, 2015"; and (3) if Troy's "friends were under the influence of drugs on the night in issue ... then that drug use is relevant to establish their credibility and their testimony of what they observed." Doc. #558 at 2.

Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Troy's carelessness and drug use are relevant to the proceedings, as are Troy's friends' credibility and the defense that some friend of Troy is the proximate cause of his injuries. Accordingly, evidence of Troy's friends' drug use is admissible under Rules 401 and 402.

3

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The rule that a "district court is accorded a wide discretion in determining the admissibility of evidence … is particularly true with respect to Rule 403 since it requires …balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

Federal Rule of Evidence 404(a)(1) provides, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." However, Federal Rule of Evidence 404(a)(3) provides that "[e]vidence of a witness's character may be admitted under Rules 607, 608, and 609." Pertinent here are Federal Rules of Evidence 607 and 608. Rule 607 allows any party to "attack a witness's credibility" through impeachment, while Rule 608(b) provides that

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness or another witness whose character the witness being cross-examined has testified about. By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

"The inquiry [into the character for truthfulness or untruthfulness] is strictly limited to character for veracity, rather than allowing evidence as to character generally." *United States v. Greer*, 643 F.2d 280, 283 (5th Cir. 1981) (alterations omitted) (quoting Fed. R. Evid. 608(b) advisory committee's note to 1972 proposed rules). Furthermore, "no tenable contention can be made that merely by testifying [a witness] waives his right to foreclose inquiry on cross-examination into

4

criminal activities for the purpose of attacking his credibility. So to hold would reduce the privilege to a nullity." *United States v. McClurge*, 311 F.3d 866, 874 (7th Cir. 2002) (quoting Fed. R. Evid. 608(b) advisory committee's note to 1972 proposed rules).

### i. First Ground: Extent of Drug Use and Carelessness

Evidence of Troy's friends' drug use is not admissible to demonstrate the extent of Troy's drug use and the carelessness of him and his friends. First, offering such evidence for this purpose constitutes impermissible character evidence under Rule 404(a) as it is offered to prove that on a particular occasion Troy or one of his friends acted in accordance with the character or trait of engaging in risky or illegal behavior. Further, such evidence does not constitute an inquiry into a witness' character for truthfulness or untruthfulness—that is to say, for veracity. Moreover, the Court finds that this evidence is not admissible on this ground under Rule 403. First, evidence of drug use is highly prejudicial. *See, e.g., United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1017 (9th Cir. 1995) ("Evidence that a defendant uses drugs is highly prejudicial."). Second, admitting such evidence for this purpose would be cumulative, or repetitive, to the extent that Troy's drug use is not in dispute and will be introduced as part of the plaintiff's case in chief. *See, e.g.*, *Elwood v. Pina*, 815 F.2d 173, 178 (1st Cir. 1987) ("Evidence is cumulative if repetitive, and if the small increment of probability it adds may not warrant the time spent in introducing it.").

### ii. Second Ground: As a Defense

Offering evidence of Troy's friends' drug use for the purpose of asserting the defense that those who supplied LSD to Troy were the sole and/or contributing cause of Troy's injury does not constitute impermissible character evidence under Rule 404. However, questioning Friedman, or some other witness, about his history of drug use to claim that he caused Troy's death has scant probative value—as introducing such evidence is not necessary to mount such a defense—but

would inject a substantial amount of prejudice into the proceedings. Accordingly, evidence of Troy's friends' drug use is not admissible for this purpose.

### iii. Third Ground: To Establish Credibility and Perception

Offering evidence of Troy's friends' drug use to establish a witness' credibility and the ability to perceive the events underlying his or her testimony does not constitute impermissible character evidence under Rule 404. Indeed, such evidence is admissible over Rule 403 objections to the extent it addresses a witness' ability "to perceive the underlying events and testify lucidly at trial." *United States v. Womack*, 496 F.3d 791, 797 (7th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (Oct. 5, 2007); *United States v. Hickey*, 596 F.2d 1082, 1090 (1st Cir. 1979) (witness can be asked about drug use that may have affected his or her perception of events as long as the drug use occurred within a reasonable time of the events surrounding the trial). However, the Court will not allow proceedings to devolve into mini-trials inquiring on a peripherally related—and prejudicial—matter such as a witness' history of drug use. Accordingly, evidence of a witness' drug use will only be admitted to the extent that it implicates a witness' ability to perceive the events underlying his or her testimony.

For the reasons provided, this motion [509] is **GRANTED IN PART and DENIED IN PART**. It is denied to the extent that evidence of a witness' drug use may be admitted to the extent that it implicates a witness' ability to perceive the events underlying his or her testimony. It is granted in all other respects.

### C. Plaintiff's motion in limine [511] to preclude Defendants from offering or introducing evidence of any investigation by the Federal Bureau of Investigation (FBI), Mississippi Bureau of Investigation (MBI), The Department of Justice (DOJ) and/or the Office of the Attorney General

In this motion, Kelli requests

> that counsel for Defendants, and through such counsel any and all Defendants' witnesses, be instructed by an Order of this Court to refrain from making any

> comments or suggestions to jurors in *voire dire* examination, opening statements or closing arguments, or by interrogation of Defendants' witnesses and statements of Defendants' witnesses, or cross-examination of Plaintiff and Plaintiff's witnesses, regarding evidence of any investigation of the Federal Bureau of Investigation (FBI), Mississippi Bureau of Investigation (MBI), the Department of Justice (DOJ) and/or Office of the Attorney General that was conducted in response to Plaintiff's death.

Kelli represents that numerous government agencies investigated the Southaven police department's conduct as it relates to Troy's death. Doc. #512 at 2. Kelli avers that "no criminal charges were brought against the officers involved in Troy's arrest and hog-tying, apparently because Troy's death occurred while he was under medical supervision." *Id*. She thus seeks to exclude any reference to these investigations and their outcomes under Federal Rules of Evidence 401, 402, and 403. *Id*.

Kelli argues that any reference at trial to such investigations and their outcomes "threatens to create a trial within a trial concerning the findings of the specific agency and why there was no finding of criminal conduct." *Id*. at 3. Furthermore, Kelli submits that inquiring about such investigations and their outcomes has scant probative value—given the investigations involve the "exercise of prosecutorial discretion by the various agencies" and "address the question of whether to bring criminal charges against law enforcement officers[,] not the resolution of any civil liability"—but threatens to inject prejudice into the proceedings, confuse the jury, and waste time. *Id*.

In response, the City of Southaven, Todd Baggett, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham, Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, and Richard A. Weatherford (collectively, the "Southaven Defendants") contend that "the only reason that the evidence of these investigations … have been part of this litigation is because Goode's counsel asked questions of Southaven witnesses on the matter." Doc. #548 at 2. "The fact that Goode's counsel initiated testimony about outside agency investigations establishes that

counsel believed the issue was important until he learned those agencies did not investigate ….." *Id.* at 4. Thus, the Southaven defendants argue "that outside agencies did not conduct an investigation and the reasons that they did not are certainly relevant to issues relating to the reasonable efforts used by officers in this case to restrain Troy … and get him medical attention as soon as possible." *Id.*

To the extent that evidence of investigations and their outcomes carries any probative value, such value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time given the different standards between such investigations and a civil jury trial. *See, e.g.*, *Stump v. Gates*, 211 F.3d 527, 536–37 (10th Cir. 2000) (evidence of state grand jury's investigative report into decedent's death was substantially outweighed by the danger of undue prejudice and confusing or misleading the jury in § 1983 action against city and police chief by decedent's survivors). Thus, Kelli's motion [511] is **GRANTED**.

**D. Plaintiff's motion in limine for spoliation sanctions [513]**

In the present motion, Kelli "seeks sanctions against the City of Southaven for failing to preserve the shirt that Troy was wearing at the time of the incident [and] also . . . for failing to preserve the Pulse Oximetry . . . reading taken by the ambulance technician while Troy was transported to the hospital." Doc. #514 at 2. The Southaven defendants filed a response in opposition.

"An adverse inference based on the destruction of potential evidence is predicated on the bad conduct of the defendant." *Bryant v. Wal-Mart Louisiana*, L.L.C., 729 F. App'x 369, 370 (5th Cir. 2018) (internal quotation marks omitted). "A plaintiff must show that a defendant acted in bad faith to establish that it is entitled to such an inference." *Ford v. Potter*, 354 F. App'x 28, 33 (5th Cir. 2009) (internal quotation marks omitted). "Mere negligence is not enough to warrant an

8

instruction on spoliation." *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (alterations and internal quotation marks omitted).

Kelli asserts that under Mississippi law "the negative inference for spoliation of evidence is available even where the spoliation was negligent." Doc. #514 at 6 (citing *Thomas v. Isle of Capri Casino*, 781 So.2d 133–134 (Miss. 2001)). However, federal—not Mississippi—law controls the imposition of negative inference spoliation instruction. *King v. Illinois Cent. R.R.*, 337 F.3d 550, 555–56 (5th Cir. 2003) (applying federal, not Mississippi, law to issue of negative inference spoliation instruction in a diversity case). Kelli's reliance on Mississippi authority, coupled with her argument sounding only in negligence, fails to carry her burden that the Southaven defendants exhibited bad faith.[1] *See* Doc. #514 at 8 (averring that Southaven defendants breached a duty to preserve evidence under their control but not pointing to bad faith conduct on their part).

For these reasons, Kelli's motion [513] is **DENIED**.

---

[1] The Southaven defendants argue persuasively that "there is simply no proof that the Southaven defendants had a duty to preserve Troy's clothing, that the Southaven defendants disposed of the clothing, or that the Southaven defendants had any reason to suspect the clothing would be claimed to be potential evidence in a subsequent lawsuit." Doc. #550 at 4. Moreover, the Southaven defendants submit that paramedics were "not sure if Goode pulled the pulse oximetry clip off his finger, or if any reading was ever obtained" and that any suggestion of bad faith conduct is belied by the fact that "a pulse oximetry reading was taken as soon as Goode was assessed at [the hospital], showing nothing out of the norm for a patient fighting against restraints as Goode was." *Id*. at 7.

**Conclusion**

**IT IS THEREFORE ORDERED AND ADJUDGED** that

1. Plaintiff's *Motion in Limine* [507] is **DENIED WITHOUT PREJUDICE.**

2. Plaintiff's *Motion in Limine* [509] is **GRANTED IN PART and DENIED IN PART**. It is denied to the extent that evidence of a witness' drug use may be admitted to the extent that it implicates a witness' ability to perceive the events underlying his or her testimony. It is granted in all other respects.

3. Plaintiff's *Motion in Limine* [511] is **GRANTED**.

4. Plaintiff's *Motion in Limine* [513] is **DENIED**.

**SO ORDERED**, this the 7th day of March, 2019.

/s/ **MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**