**KELLI DENISE GOODE, Individually,**
**and also as the Personal Representative**
**of Troy Charlton Goode, Deceased, and**                         **PLAINTIFF**
**as Mother, Natural Guardian, and Next**
**Friend of R.G., a Minor, and also on**
**behalf of all similarly situated persons**

**V.**                                                   **NO. 3:17-CV-60-MPM-RP**

**THE CITY OF SOUTHAVEN, et al.**                                 **DEFENDANTS**


## <u>ORDER</u>

This cause comes before the Court on Defendant Oliver's motions in limine [515] [517] [519] [521] [523] [525] [527] [529] [531].

### Motion in Limine Standard

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (internal citations omitted). When ruling upon motions in limine, the Court notes that "[e]vidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Id*. Rulings on a motion in limine "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## A. Oliver's motion in limine [515] to exclude certain testimony and evidence of lay witnesses

On June 7, 2018, Lemuel D. Oliver, M.D. filed the instant motion along with a supporting memorandum brief. Docs. #515, #543.[1] This motion contains eight subparts seeking "to exclude certain testimony and evidence of lay witnesses." Doc. #543 at 1. Oliver's motion was joined in full by Baptist Memorial Hospital-Desoto ("BMH-D"), Doc. #551, and as to "subparts 1, 2, 3, 4, 5, 6, and 8" by the City of Southaven, Todd Bagget, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham, Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, and Richard A. Weatherford (collectively, the "Southaven Defendants"). The next day, Kelli Denise Goode responded to the motion, Doc. #561, and the Southaven Defendants "respond[ed in opposition] to subpart 7 of the Motion, concerning potential trial testimony by Officer Todd Baggett." Doc. #563 at 1; see Doc. #562.

Oliver moves to exclude at trial: (1) "any lay testimony as to standard of care, alleged deviation, causation, cause of death, and any theories unsupported by Plaintiff's experts"; (2) "audio of the video at the scene (a/k/a the McLaughlin video) and [the playing of the] video … during opening statement"; (3) "Plaintiff and Troy Goode's friends and family['s testimony] as to what occurred at BMH-D prior to Troy Goode's death"; (4) "Troy Goode's family and friends['s testimony] as to their personal loss"; (5) "certain testimony of Nikki Goode"; (6) "certain testimony of Janet Tharpe"; (7) "questions or argument of counsel suggesting that hospital staff

---

[1] Oliver's memorandum brief was initially filed incorrectly as a motion on June 7, 2018. *See* Doc. #516. On June 8, 2018, the Clerk of the Court issued a notice of correction ordering counsel "to refile using event 'Memorandum in Support' and link to motion 515." That same day, Oliver refiled his memorandum brief. *See* Doc. #543. However, both of Oliver's submissions violated the Local Rules as exhibits should not be attached to a memorandum brief (or any submission which is in form or substance a memorandum brief). *See* L.U. Civ. R. 7(b)(2). Many of the parties' submissions in this case have failed to comply with the Local Rules. Filings that fail to comply with the Court's procedural rules generally are stricken and/or not considered by the Court. The Court reminds the parties that "[a]ttorneys practicing before the district courts of Mississippi are charged with the responsibility of knowing the LOCAL RULES … and may be sanctioned for failing to comply with them." L.U. Civ. R., Preamble.

refused to treat Troy Goode unless he remained restrained"; and (8) "questions, testimony, or arguments of counsel suggesting the Defendants 'tortured' Troy Goode." Doc. #543 at 1–13. Each exclusion moved for by Oliver will be addressed in turn.

### i. First Ground

Oliver moves to prohibit Kelli "from offering any testimony as to standard of care, alleged deviation in the standard of care, and/or causation and any theories unsupported by [her] experts. Moreover, [Kelli] and any of her lay witnesses should be prohibited from offering testimony concerning their personal criticisms of Dr. Oliver …." Doc. #543 at 1. In response, Kelli offers that she "has no intention of offering any lay opinion as to the standard of care, alleged deviation from that standard, causation or cause of death. To the extent a defendant's questions elicit such testimony, as they have in depositions, [Kelli] is without control to prevent introduction of such evidence." Doc #561 at 1. Accordingly, Oliver's first ground will be granted as unopposed.

### ii. Second Ground

Oliver's second ground addresses a video taken by David McLaughlin at the scene of Troy's arrest, which captured, among other things, Troy being loaded into an ambulance. Doc. #543 at 2. According to Oliver, "[t]o the extent that Plaintiff may seek to use this video during opening statement, such a use is improper." *Id*. Moreover, Oliver moves pursuant to Federal Rules of Evidence 402 and 403 to prohibit the jury from hearing audio of the video as it "contains the comments and conversations of unidentified witnesses who are commenting on their interpretation of the scene and what they were observing [and allowing] this testimony evidence from unknown witnesses would be highly prejudicial." *Id* at 3.

In response, Kelli contends that "the audio at issue was not made by 'unidentified witnesses.' In fact, Mr. McLaughlin has made declarations in this case discussing that videotape

and his interactions with the Southaven police and Fire/EMS personnel." Doc. #561 at 2. Thus, Kelli argues that the "statements made on the video constitute an exception to hearsay—namely, they are present sense impressions … and excited utterances" under Federal Rule of Evidence 803(1) and (2). *Id.* Furthermore, Kelli argues that there is no legal basis to prohibit the playing of the video during opening statements. *Id.*

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802.

Rule 803(1) provides that hearsay statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it" are present sense impressions "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(1). "[T]he burden of showing the elements of admissibility for a statement under the present sense impression exception, like the burden on evidentiary issues generally, is on the proponent of the evidence." *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08–cv–313, 2012 WL 2595275, at *9 (E.D. Tex. Jul. 5, 2012) (collecting cases). In this regard, the Fifth Circuit has held that a delay of fifteen minutes between the occurrence of an event and a statement is insufficient to meet the immediacy requirement of the exception "unless the declarant was still in a state of excitement resulting from the event." *U.S. v. Cain*, 587 F.2d 678, 681 (5th Cir. 1979).

Rule 803(2) provides that hearsay statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" are

excited utterances "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(2). "Unlike the present sense impression exception, the excited utterance exception is not determined solely based on the period of time that elapsed between a statement and the event it references." *Maria S. for E.H.F. v. Doe*, 267 F.Supp.3d 923, 938 (S.D. Tex. 2017) (citing *United States v. Hefferon*, 314 F.3d 211, 223 (5th Cir. 2002)). "The Rule 803(2) Advisory Committee Notes state that 'spontaneity is the key factor.'" *United States v. Angleton*, 269 F. Supp. 2d 878, 890 (S.D. Tex. 2003) (quoting Fed. R. Evid. 803(2) Advisory Committee's Note). Thus, an excited utterance must be spontaneous, excited, or impulsive, and not the product of reflection and deliberation. *United States v. Lawrence*, 699 F.2d 697, 704 (5th Cir. 1983); *see also* 2 Robert P. Mosteller, *McCormick on Evidence* § 272 (7th ed. 2016) ("A useful rule of thumb is that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.")

Here, the Court finds that McLaughlin's statements about Troy being restrained as he was loaded into an ambulance constitute an exception to the hearsay rule, qualifying as both present sense impressions and excited utterances. First, the statements on the tape were contemporaneous, "made while or immediately after the declarant perceived it." Second, the statements relate to a "startling … condition made while the declarant was under the stress of excitement caused by the event or condition." As such, the jury will be permitted to hear audio of the video.

To the extent that Oliver relies on *United States v. Thompson*, 482 F.3d 781 (5th Cir. 2007), as authority to exclude audio of the video from the jury, that case is inapposite. *Thompson* does not stand for the proposition that a jury should be limited in hearing the audio of a video recording; rather, it held that the district court "committed plain error by allowing the video tapes to be entered

into evidence and played with only a transcript *and not the audio portion as well*." 482 F.3d at 788 (emphasis added). Thus, *Thompson* is not authority that supports excluding the audio of the video from the jury—rather, the holding of the case stands for the opposite of the proposition it is cited for: that if the video is played, so too must its audio.

No party has cited pertinent authority on the propriety of playing videotapes—which will be submitted into evidence—during an opening statement. Learned treatises about video technology in the courtroom find it "important to distinguish between the use of deposition videotape and other types of video images during opening statements." 58 Am. Jur. Trials 481 (originally published in 1996). While "[f]ull motion video segments of a deposition are rarely allowed during opening statements [o]ther types of full-motion live and computer-generated video are becoming increasingly common during opening statements." *Id.*; *see Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-05-00334, 2008 WL 190990, at *1 (N.D. Cal. Jan. 21, 2008) (noting the "sparse case law on whether a court should permit parties to play portions of video depositions in their opening statements" while asserting that the court "is less sanguine regarding [such] practice" than a learned treatise recommending such practice as "'very effective' advocacy"); *Doe v. City of San Diego*, No. 12CV689, 2014 WL 11997809, at *6 (S.D. Cal. July 25, 2014) (collecting cases). The "general rule … followed in the majority of federal and state jurisdictions" is that an attorney is "entitled to read from or display documents and other exhibits that you expect to be admitted into evidence." Joel Simberg, *Displaying Digital Media During Opening Statements: Tactics, Techniques, and Pitfalls*, 60 DePaul L. Rev. 789, 790–91 (2011). As Kelli is entitled to display the video as an exhibit—assuming it is admitted into evidence—the Court concludes that her counsel will be permitted to play it during her opening statement. Accordingly, Oliver's second ground will be denied.

### iii.    Third Ground

Oliver moves to prohibit Kelli and Troy's "friends and family, from testifying as to what occurred at BMH-D prior to Troy Goode's death." Doc. #543 at 3. In response, Kelli offers that she "has no intention of offering any such testimony. Plaintiff may offer testimony regarding what these individuals were told by employees [of BMH-D and the City]. Such testimony is admissible as statements by party opponents …." Doc #561 at 1. Accordingly, Oliver's third ground will be granted as unopposed, with the caveat that Kelli may offer testimony regarding a statement by a party opponent offered against that party opponent under Federal Rule of Evidence 801(d)(2).[2]

### iv.    Fourth Ground

Oliver moves to prohibit Troy's "family and friends from testifying as to their personal loss" because they are not statutory wrongful death beneficiaries under Mississippi law. Doc. #543 at 4. In response, Kelli offers that she "has no intention of eliciting testimony regarding the emotional loss of individuals other than Plaintiff and her minor child R.G. To the extent that a witness has difficulty testifying … testimony regarding that difficulty is relevant to assisting the jury in evaluating the witness' credibility." Doc #561 at 3–4. Accordingly, Oliver's fourth ground will be granted as unopposed.

### v.    Fifth Ground

Oliver moves to prohibit Nikki Goode, Troy's mother, from testifying that "Oliver lied to her about Troy's treatment, and that Troy received a 'shot' in 2008 that reversed the effects of

---

[2] A statement offered against an opposing is not hearsay if the statement:

(A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

LSD" pursuant to Federal Rules of Evidence 401, 403, 701, and 702. Doc. #543 at 5. In response, Kelli represents that "counsel for the defendants elicited the testimony that they now ask to be excluded [and] Plaintiff does not intend to elicit from [Nikki] the testimony cited by Defendant." Doc. #561 at 4. Accordingly, Oliver's fifth ground will be granted as unopposed.

### vi.    Sixth Ground

Janet Tharpe testified that she witnessed Troy's admission to the BMH-D emergency room on July 18, 2015. Oliver seeks to exclude portions of Tharpe's testimony in two regards.

First, Oliver objects to Tharpe's testimony that although she could not see Troy, she heard someone in the room where he was placed moaning and saying "breathe." Doc. #543-2 at 44–45. Tharpe testified that she believed Troy was the source of the sounds as he "was the only person that was loud in there" but that she "cannot say for sure that it was him. I would probably think it was him after seeing him come past me." *Id*. Oliver—noting that Tharpe was unsure about how many people were in the room with Troy—moves to exclude any effort by Tharpe to attribute statements, which she purports were made by Troy, to Troy pursuant to Rule 403 as "sheer speculation." Doc. #543 at 9. Moreover, Oliver argues "this testimony should be excluded under Rule 602 as … Tharpe admitted she has no personal knowledge it was in fact Mr. Goode who spoke the word 'breathe.'" *Id*.

Second, Oliver objects to Tharpe's testimony that she observed Troy in respiratory distress as he was being transported between rooms at BMH-D. Tharpe testified that Troy was "focused" on "trying to breathe," Doc. #543-2 at 13, 49, that Troy was in "distress," *id*. at 14, that Troy was having difficulty breathing, *id*. at 51, and that Troy's "cause of death … [had] something to do with him being able to breathe," *id*. at 54–55. Oliver argues that this evidence should be excluded under Rules 701 and 702 as "Tharpe is wholly unqualified to assess Mr. Goode's physical state,

whether he was having difficulty breathing, whether he was in distress and certainly whether his inability to breathe caused his death." Doc. #543 at 11. Moreover, Oliver argues that "this testimony should be excluded under Rule 403 as it is highly prejudicial … to have an unqualified lay witness offer testimony on the medical state of a patient in the emergency room" and that such testimony would "mislead [or] confuse the jury." *Id*. Oliver thus argues that Tharpe's testimony should be limited "to her lay observations of Mr. Goode – the color of his skin and his position when she saw him in the hallway only – without offering medical testimony about his respiratory status or whether he was in distress." *Id*. at 11–12.

In response, Kelli argues that Tharpe's testimony is admissible because "[e]ach of the possible declarants would qualify under an exception to the rule against hearsay." Doc. #561 at 5. First, Kelli argues that if Troy uttered the word "breathe" that statement qualifies as an exception to the hearsay rule as a present sense impression, Fed. R. Evid 803(1), excited utterance, Fed. R. Evid 803(2), or a statement made for medical diagnosis, Fed. R. Evid 803(4)[3]. *Id*. Second, Kelli argues that if the declarant was a Southaven police officer or a BMH-D nurse, stating "breathe" qualifies as an admission of a party opponent, Fed. R. Evid. 801(d)(2), which can be admitted against the declarant as non-hearsay. *Id*. Thus, Kelli contends that the concerns raised by Oliver are directed towards the weight, not the admissibility, of Tharpe's testimony, as the defendants are "free to cross examine Ms. Tharpe about her knowledge [and the] jury can determine … whether it was Troy, a police officer, or a nurse who was moaning and exclaiming 'Breathe!' in the minutes before Troy went into cardiopulmonary arrest." *Id*. at 6.

---

[3] A statement made for medical diagnosis or treatment is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness, if that statement "is made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause."

As a threshold matter, a hearsay statement must be offered into evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Here, it is less than clear what the matter asserted would be—let alone how the statement would prove that that matter is true. Yet, even if the Court assumes that this statement contains an assertion and is being offered to prove the truth of that assertion, it would still be admissible. Hence, the motion will be denied to the extent that Tharpe may testify that she heard an unidentified individual state "breathe" in the room where Troy was being treated, because the statement would be admissible—for the reasons urged by Kelli—regardless of whether it was uttered by Troy, a Southaven police office, or a BMH-D nurse. The jury can weigh this evidence according to Tharpe's testimony and credibility on the stand. However, Oliver's motion will be granted to the extent that it seeks to preclude Tharpe from diagnosing Troy with a medical condition and to restrict her testimony to lay opinions.

### vii.    Seventh Ground

Oliver moves to exclude the argument or suggestion the he refused to treat Troy unless Troy "remained restrained in the same manner in which he was presented to the emergency department." Doc. #543 at 12. Oliver argues that "the only evidence of a discussion between the police and any hospital staff about the restraints is found in two brief references in the testimony of … Todd Baggett, who claims an unidentified nurse told him the soft restraints used by the hospital would not hold" Troy. Doc. #543 at 12 (emphasis omitted); *see* Doc. #543-3 at 55.[4] Thus, Oliver contends that "it would be improper and prejudicial for plaintiff's counsel to suggest by

---

[4] Misleadingly, the movants submitted a single page from Baggett's deposition—where he testified that an individual in the hospital stated soft restraints would not hold Troy—as an exhibit to this motion while omitting the portion of Baggett's deposition that describes the declarant despite not knowing his name. *See* Doc. #543-3. Elsewhere, Baggett testified that there were two white male nurses with dark hair in the room—one was tall, the other short—and that the "shorter one" was the declarant. *See* Doc. #409-4 at 58–59. Thus, Baggett has provided more than a bald assertion that the declarant was a BMH-D employee.

questions or argument that there was a conversation between the Southaven police or paramedics and … Oliver that included any such 'refusal.'" *Id*.

The Southaven defendants, although not opposed to the relief sought by Oliver, responded "out of an abundance of caution" to ensure that the Court's ruling does "not affect the ability of … Baggett to testify at trial concerning his personal conversations with [BMH-D] nurses on the issue of restraints and positioning" of Troy. Doc. #563 at 2.

In response, Kelli argues "that the proponent of the statement does not necessarily need to identify the declarant" for a statement to be offered against a party opponent under Rule 801(d)(2). In support of this contention, Kelli contends that the Fifth Circuit has "affirmed the admission of an out-of-court statement by an unidentified individual," where there were indications that the declarant—although unidentified—was an employee of the defendant because the declarant was wearing a hard hat bearing its name. Doc. #561 at 6 (citing *Davis v. Mobil Oil Expl. & Prod., S.E., Inc.*, 864 F.2d 1171, 1174 (5th Cir. 1989)). Thus, Kelli argues that "the nurse uniform worn by the declarant here, as well as [his] presence in the hospital and interaction with police officers on behalf of BMH[-D] certainly is proof that she was a BMH[-D] employee." *Id*.

In *Davis*, the Fifth Circuit explained that

> while a name is not in all cases required, a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D).

*Id*. "In other words, the proponent of the statement does not necessarily need to identify the declarant, but she must offer sufficient evidence to conclude that Rule 801(d)(2)(D) applies." *Thornton v. J.C. Penney Co.*, No. 3:10CV203, 2011 WL 2565292, at *1 (S.D. Miss. June 28, 2011). "[T]he inquiry regarding scope of employment was whether the speaker was authorized to act for his principal concerning the matter about which he allegedly spoke." *Kelly v. Labouisse*,

364 F. App'x 895, 896 (5th Cir. 2010) (citing *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d

1560, 1566 (11th Cir.1991)). "However, the contents of the statement are not alone sufficient to

establish the agency or employment relationship and scope thereof under subdivision (D)." *Rhodes*

*v. Wells Fargo Bank, N.A.*, No. 3:10-CV-02347, 2013 WL 2090307, at *6 (N.D. Tex. May 14,

2013) (alterations and internal quotation marks omitted).

    In *Aumand v. Dartmouth Hitchcock Medical Center*, James, the son of one of the plaintiffs,

alleged that he "asked [a] 'fellow,' whom he met in the corridor near the nurse's station, whether

he had seen or touched [his mother's blue and swollen] hand." 611 F. Supp. 2d 78, 93 (D.N.H.

2009).

> According to James's deposition testimony, the man told him "it was an injection
> of D–50 into the tissue of her hand. Someone had made a mistake. He had never
> seen anything like it." But, save for a less-than-certain memory that the man was
> about the same height as him, James could not recall anything about the man's
> appearance, such as his hair color, clothing, the characteristics of his voice, or what
> he was holding or doing at the time. James "just thought he was a nurse, or a
> physician's assistant, or something because he was the one I met."

After the plaintiffs sought to admit this alleged statement under Rule 801(d)(2)(D) against the

hospital, it objected that "in light of James's inability to recall anything about the man who made

the statement, the plaintiffs cannot show that he even was the hospital's employee, let alone that

the subject of the statement, [his mother's] condition, was within the scope of any such

employment." *Id.*

    The court held that "James's testimony provides adequate circumstantial evidence that the

declarant, first, was an employee of Dartmouth Hitchcock and, second, that the statement

concerned a matter within the scope of his employment." *Id.* at 93–94.

> James recalled that the man was standing in the corridor near the nurse's station
> and, when asked whether he knew about [his mother's] hand, gave a response that
> indicated not only some specific knowledge of that subject, i.e., that she had
> received an injection of a particular substance, but also the basis of that knowledge,
> i.e., that he had actually seen the hand, because he had "never seen anything like

it." It is difficult to imagine that such things would be known or seen by a person whose job did not include knowing or seeing them, let alone a person who was not even employed by the hospital.

*Id.*

Here, considering that Baggett was present throughout Troy's treatment at BMH-D and provided a physical description of the declarant as a BMH-D nurse, there is evidence that the challenged statement was made by the party's agent or employee on a matter within the scope of that relationship and while it existed—thus, the motion will be denied as to BMH-D.[5] However, Oliver's motion will be granted to the extent that Kelli will not be permitted to argue or suggest that Oliver "refused" to treat Troy unless Troy remained restrained—of course, such an argument or suggestion is not precluded as to BMH-D because the nurse's statement is admissible against it as an admission by party opponent. This ruling also does not affect the ability of Baggett to testify at trial concerning his personal conversations with BMH-D personnel on the issue of how Troy was restrained and positioned.

### viii.    Eighth Ground

Oliver moves to exclude "questions, testimony, or arguments of counsel suggesting that Defendants 'tortured' Troy Goode." Doc. #543 at 13. Oliver argues that "[n]o witness—expert or lay—has offered testimony or evidence to support these allegations or to support any comparison with practices of the mafia or terrorists. Any such evidence or references should be excluded under Fed. R. Evid. 401 and 403." *Id.* In response, Kelli contends that "[t]o the extent Defendant's experts wish to characterize the hogtie as 'physiologically neutral,' Plaintiff should be permitted to cross

---

[5] Under FRE 104(a), "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Under FRE 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."

examine them with medical literature that disproves their characterizations," citing to Federal Rule of Evidence 803 regarding statements in learned treatises, periodicals, or pamphlets. Doc. #561 at 7.

The Court agrees with Oliver that "[a]ny argument or comment of counsel invoking 'torture' will only be intended to inflame the jury in an effort to have the case decided based on something other than the facts and law." Doc. #543 at 13. Any probative value this evidence carries will be substantially outweighed by the danger of unfair prejudice. Accordingly, Oliver's eighth ground will be granted.

For the reasons above, Oliver's motion [515] is **GRANTED in part** and **DENIED in part**. Oliver's first, third, four, and fifth motions in limine are **GRANTED** as unopposed; Oliver's eighth motion in limine is **GRANTED**; Oliver's sixth and seventh motions in limine are **GRANTED in part** and **DENIED in part**; and Oliver's second in limine motion is **DENIED**.

### B. Oliver's motion in limine [517] to exclude evidence of insurance

On June 7, 2018, Oliver filed the instant motion, along with a supporting memorandum, arguing that Kelli "should be prohibited from making any comment or asking any question that would indicate to the jury that . . . Oliver, or any of his experts or witnesses, have or may have insurance, or from mentioning insurance at all during the trial, including voir dire." In his memorandum, Oliver cited to the Federal Rules of Evidence and Mississippi law.

Six days later, the motion was joined by the Southaven defendants. Doc. #545 at 1. Kelli responded to the motion indicating that she "has no intention of offering such evidence," and arguing that the motion "should be denied as moot." Doc. #555 at 1. As such, the motion [517] is unopposed and will be **GRANTED**.

### C. Oliver's motion in limine [519] to exclude autopsy photos

On June 7, 2018, Defendant Oliver filed the instant motion along with a supporting memorandum brief. Docs. #519, #520. Six days later, Oliver's motion was joined in full by BMH-D, Doc. #551, and by the Southaven defendants, Doc. #545 at 1.

In his motion, Oliver "anticipate[s] that the Plaintiff may seek to introduce photographs taken during the autopsy of Troy" into evidence. Doc. #520 at 1. Oliver moves to exclude such photos under Federal Rules 402 and 403. First, Oliver argues that the photographs have limited probative value because no expert or other witness has relied on them, and no expert or witness has identified them as relevant or pertinent to Kelli's claims. *Id*. According to Oliver, "[t]o the extent that these photographs are relevant in any respect, they only show that Troy … is deceased, which is a point not in dispute." Oliver asserts that the photographs must be excluded as they have limited probative value and "are classic examples of evidence [that] tend to induce a jury decision on a purely emotional basis … because of their potential to mislead, confuse, and incite unfair prejudice." *Id*. at 2.

In response, Kelli argues that the photographs' unfair prejudice does not substantially outweigh their probative value regarding issues such as: (1) whether Troy had facial abrasions or contusions; (2) the extent of Troy's conscious pain and suffering, to the extent that photographs "have evidentiary value [that] … can render [a] description more intelligible"; and (3) the extent of Troy's "injuries, and the amount of pain, discomfort, and mental anguish associated with the injur[ies]." Doc. #553 at 1–2. Thus, Kelli argues that it would only be appropriate to exclude the photos if their "exclusive purpose … is to influence and prejudice the jury," which she contends is not the case here given the proper purposes for the evidence she provides. *Id*. at 2 (citing *Eckman v. Moore*, 876 So. 2d 975 (Miss. 2004)).

Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The rule that a "district court is accorded a wide discretion in determining the admissibility of evidence … is particularly true with respect to Rule 403 since it requires …balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

"[Fifth Circuit] caselaw indicates that admitting gruesome photographs of the victim's body in a murder case ordinarily does not rise to an abuse of discretion where those photos have nontrivial probative value." *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007). In the civil arena, trial courts in the Fifth Circuit have excluded autopsy photos under Rules 402 and 403 where "the type and severity of [decedent's] injuries are not relevant." *Bridges v. Enter. Prod. Co.*, No. CIVA NO. 3:05CV786, 2007 WL 571074, at *1 (S.D. Miss. Feb. 20, 2007). In *Bridges*, plaintiff argued that autopsy photos "should be admitted as they display the type and severity of [decedent's] injuries." *Id*. However, the court excluded the autopsy photographs given their lack of probative value and danger of prejudice, as "the parties do not dispute that [decedent], a pedestrian, was struck by a tanker truck driven by Defendant … or that she died [instantaneously] because of the injuries she received in that collision." *Id*.

Here, by contrast, the cause of Troy's death is disputed, and, as Kelli argues, introducing Troy's autopsy photos will not be for the exclusive purpose of influencing and prejudicing the jury; rather, the photographs have probative value as to whether Troy had facial abrasions or contusions, the extent of his injuries, and the extent of his conscious pain and suffering. Accordingly, the prejudice associated with introducing the autopsy photographs does not substantially outweigh their probative value and this motion [519] will be **DENIED**. However, any photos not related to the proper purposes for which Kelli has offered the photos will be excluded.

### D.  Oliver's motion in limine [521] to exclude hindsight testimony

Oliver, joined by BMH-D, argues that "[u]nder Mississippi law, liability cannot be imposed on a physician whose treatment with the benefit of hindsight shows he or she may have been mistaken." Doc. #522 at 1 (citing *Hall v. Hilbun*, 466 So. 2d 856, 871 (Miss. 1985)). Oliver, thus, moves to prohibit Kelli "from testifying, or soliciting any testimony from any witness, or suggesting to the jury that liability should be imposed upon … Oliver because with the exercise of hindsight [Troy's] course may have been different." *Id*.

In response, Kelli offers that she "has no intention of offering the 'hindsight testimony' discussed in *Hall v. Hilbun*." Doc. #554 at 1 (internal citation omitted). However, Kelli notes that Oliver "does not identify the testimony [he] believes constitutes 'hindsight testimony' and offers little explanation of what testimony [he] fears." *Id*. Thus, Kelli provides that she will not argue that "liability should … be imposed where a physician complies with the standard of care but, despite such compliance, later discovers that the bona fide medical judgment was mistaken. In contrast, [Kelli] will offer expert testimony that [Oliver] violated the standard of care and that those violations caused injuries to Troy …." *Id*. at 1–2.

Although Kelli has indicated she will not offer hindsight testimony—and Oliver has not identified the hindsight testimony that he anticipates Kelli will offer—out of an abundance of caution the Court will grant the motion and reiterate that expert causation testimony in medical malpractice cases must identify actual breaches in the standard of care. *See Hubbard v. Wansley*, 954 So. 2d 951, 957 (Miss. 2007) ("Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries."). This motion is **GRANTED**.

### E. Oliver's motion in limine [523] to exclude hospital policies

Oliver anticipates that Kelli "will attempt to introduce several BMH-D[] hospital policies," which he argues is improper because such "policies, which may serve as guidelines for nursing care in a hospital setting, do not govern physician care nor establish a standard of care for physicians." Doc. #524 at 1–2. Thus, Oliver moves pursuant to "Fed. R. Evid. 401-403, and 801-802, as well as Fed. R. Civ. P. 26" to prohibit Kelli "from suggesting to the jury [that] these policies have any application to … Oliver or the standard of care required in treating" Troy because Kelli "has not disclosed any expert opinion that would support a contention that such policies are relevant to the [physician] standard of care …." *Id.* at 2.

In response, Kelli offers that she "does not intend to argue that the hospital rules alone govern the standard of care. Instead, [she] will introduce … the policies and procedures as evidence of the breaches of care," and to show Oliver's knowledge that he was wrongly treating Troy. Doc. #556 at 3. Thus, Kelli argues that this evidence is: (1) admissible under Rules 401 and 402, while its probative value is not substantially outweighed by the danger of unfair prejudice under Rule

403; (2) is not hearsay under Rule 801(d)(2) as a statement by a party opponent as to BMH-D; and (3) satisfies the hearsay exception under Rule 803(6)[6] of a regularly conducted activity.

Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The rule that a "district court is accorded a wide discretion in determining the admissibility of evidence … is particularly true with respect to Rule 403 since it requires …balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

Hearsay is a statement that (1) the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. Under Federal Rule of Evidence 801(d)(2), a statement offered against an opposing party is not hearsay if the statement:

---

[6] A record of an act, event, condition, opinion, or diagnosis is not excluded by the rule against hearsay if:
  (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

> (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy.[7]

"The Advisory Committee Notes observe that because admissions against a party's interest are received into evidence without many of the technical prerequisites of other evidentiary rules—such as, for example, trustworthiness and personal knowledge—admissibility under this rule should be granted freely." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert witness' report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

In the Fifth Circuit, internal policies and guidelines, although not themselves determinative of the standard of care, "are considered relevant evidence and may be properly introduced" as "evidence of the standard of care." *Shoemake v. Rental Serv. Corp.*, No. CIVA106CV426, 2008 WL 345498, at *1 (S.D. Miss. Jan. 30, 2008) (citing *Quijano v. United States*, 325 F.3d 564, 568 (5th Cir. 2003) (applying Texas state law). Mississippi law is in accord. *See Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 665 (Miss. 2002) (violation of internal hospital regulations "may serve as evidence of negligence" but "do not establish a legal duty of care to be

---

[7] The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

applied in a civil action"). Thus, BMH-D policies are relevant under Rule 401 and carry a probative value that is not substantially outweighed by any of the dangers listed under Rule 403.

Consequently, BMH-D's policies are not hearsay if they are introduced against it as BMH-D manifested that it has adopted the policies. Further, introducing the policies would not violate Rule 26 for two reasons. First, Fowler's expert report, which is not attached as an exhibit to the instant motion, opines that leaving Troy in a prone, restrained position "is a violation of hospital protocol which requires a trained medical person in the room of a shackled patient at all times." Doc. #458-2 at 3. Second, there is no suggestion that Fowler will testify on the efficacy or sufficiency of BMH-D's policies—rather, the policies are being introduced against BMH-D as evidence of the standard of care. Thus, evidence of hospital policies will not be excluded—but violations of such policies cannot be used, on their own, to establish a violation of the standard of care.

### F. Oliver's motion in limine [525] to exclude evidence of tax liens

Oliver, anticipating that Kelli may introduce evidence of his federal tax liens during the compensatory phase of the trial, filed the instant motion arguing that such evidence is irrelevant and improper character evidence that must be excluded. Doc. #526 at 1–2. In response, Kelli submits that she is aware of such liens but "has no intention of offering any evidence regarding these liens," and that the motion should be denied as moot. Doc. #557 at 1. Thus, the Court **GRANTS** the motion as unopposed.

### G. Oliver's motion in limine [527] to exclude certain medical testimony and evidence

In this motion, Oliver, later joined by BMH-D, moves to exclude: (1) "testimony that Ativan and/or Haldol caused or contributed to cause Troy Goode's death"; (2) "standard of care opinions lacking causation and causation opinions lacking a standard of care deviation"; (3)

"critical standard of care opinions against … Oliver[] except from … [Mark] Fowler"; and (4) "any reference to the implementation of the ACLS protocol for tachycardia." Doc. #528 at 1, 6–8.

The Case Management Order set a January 23, 2018, deadline for submitting *Daubert* challenges. Doc. #389. The first three exclusions Oliver seeks are thus untimely because, as urged by Kelli, they are in substance *Daubert* challenges to "the methodology and conclusions reached by Plaintiffs' experts, including testimony that Defendant contends is unreliable, outside the scope of a witness; expertise, or unsupported by the facts of this case." Doc. #560 at 1; *see, e.g., Bedingfield v. Deen*, No. CIV.A. 09-369, 2011 WL 2712950, at *1 (W.D. La. July 8, 2011) (finding "that the instant Motion in Limine is, in actuality, a veiled *Daubert* motion [as the] motion clearly challenges the qualifications of [doctor] and the reliability of his opinions, both issues a party properly challenges via a *Daubert* motion"). And so, it logically follows that these matters were addressed in the Court's order ruling on Oliver's *Daubert* challenges to Kelli's expert witnesses. *See* Doc. #597.

To the extent it seeks to exclude "any reference to the implementation of the ACLS protocol for tachycardia" as lacking a foundation in the amended complaint, Oliver's motion is properly before the Court. The amended complaint claims that the "ACLS protocols developed by the American Heart Association express the standard of care prevailing in Southaven, Mississippi for doctors, nurses, paramedics, emergency medical technicians, and other healthcare professionals for treating cardiac emergencies." Doc. #107 at 60. Among several invocations of the ACLS algorithm in the amended complaint is that it calls for healthcare providers to "utilize synchronized cardi[o]version" under certain circumstances. *Id*. at 61 ¶ 145. Oliver contends that Kelli's standard of care expert "admits cardioversion was not [the] appropriate treatment" for Troy, and Kelli agrees as she "does not intend to argue that cardioversion was required." Doc #527 at 2.

As such, Oliver's motion [527] is **GRANTED in part and DENIED in part.** It is **GRANTED** to the extent that Kelli cannot argue that cardioversion treatment was an appropriate treatment for Troy and **DENIED** in all other respects.

### H. Oliver's motion in limine [529] to exclude David Cisel

On June 7, 2018, Oliver, whose motion was later joined by BMH-D, Doc. #551, and the Southaven defendants, Doc. #545 at 1, filed the instant motion. Relying on *Rebelwood Apartments v. England*, 48 So. 3d 483 (Miss. 2010), Oliver argues that David Ciscel's expert report fails to comply with Mississippi law. Doc. #530 at 1. In response, Kelli argues that Oliver's motion, by attacking Ciscel's "methods for reaching his conclusion," "is plainly an [untimely] *Daubert* challenge." Doc. #559 at 1. The Court agrees, as the Case Management Order set a January 23, 2018, deadline for submitting *Daubert* challenges. Doc. #389; *see Clemons v. United States*, No. 4:10-CV-209, 2012 WL 5364737, at *6 n.21 (S.D. Miss. Oct. 20, 2012) (determining that argument relying on *Rebelwood* constitutes a *Daubert* challenge). Accordingly, this motion is **DENIED**.

### I. Oliver's motion in limine [531] to exclude expert opinions and related evidence

In this motion, Oliver, joined by BMH-D and the Southaven defendants, seeks to exclude: (1) "opinions not disclosed in plaintiff's expert reports," Doc. #532 at 1; (2) "testimony as to what an expert witness would have personally done in treating Troy Goode," *id*. at 3; (3) "opinions regarding the 'Manner of Death' under the standard adopted by the National Association of Medical Examiners (or any other standards)," *id*. at 4; (4) "the testimony of … Mark Fowler," *id*. at 5; (5) "certain testimony of … Parin Parikh," *id*. at 11; (6) "opinions or testimony from David Nichols … regarding positional asphyxia or excited delirium, including any opinions regarding these matters and the cause of [Troy's] death," *id*. at 13; (7) "certain testimony of … Michael

LaRochelle," *id*. at 15; (8) "certain testimony of Robert Krause," *id*. at 21; and (9) "certain testimony of Darrell Coslin," *id*. at 23.

"[O]pinions based on undisclosed facts, methodology, and principals do not allow the Court to examine the soundness of [an] expert's conclusions under *Daubert* and will not be allowed at trial." *Flagstone Dev. LLC v. Rocky Mountain Timberlands, LLC*, No. CV 08-100, 2017 WL 3820948, at *2 (D. Mont. Aug. 31, 2017). However, because undisclosed expert opinions run afoul of *Daubert* does not mean that such opinions must be exclusively challenged through *Daubert*, as Federal Rule of Evidence 26 also requires timely disclosure of expert opinions. Generally, motions challenging expert opinions as undisclosed involve the introduction of new opinions at a late stage in litigation, which is not the case here. *See, e.g.*, *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329, 2009 WL 2252129, at *9 (N.D. Okla. July 24, 2009) (addressing challenge to undisclosed expert opinions—some of which were appeared to have been taken from previously disclosed report— that were presented in an affidavit in support of a response in opposition to defendants' motion of the affidavit).

The Case Management Order set a January 23, 2018, deadline for submitting *Daubert* challenges. Doc. #389. Kelli argues that because Oliver's motion, by attacking experts' "factual bases for their opinions, their methods for reaching their conclusions, and their qualifications," "is plainly an [untimely] *Daubert* challenge." Doc. #571 at 1. Such an argument should hardly be surprising to Oliver, as his motion states that if his "*Daubert* motion is granted some of the requests in these motions may become moot." Doc. #532 at 1 n.1. To the extent that the instant motion seeks to exclude testimony regarding the "Manner of Death" under Federal Rules of Evidence 401 and 403—rather than a direct challenge to an expert's testimony—the Court will interpret such relief sought as a *Daubert* motion. *See United States v. McCluskey*, No. CR 10-2734, 2013 WL

12330062, at *7 (D.N.M. June 21, 2013) (analyzing challenge to expert opinion on manner of death under the *Daubert* framework).

Here, Oliver has not pointed to "undisclosed opinions" that were not addressed by the Court in its rulings on his and BMH-D's timely *Daubert* challenges to Kelli's experts in which the Court prohibited undisclosed opinions. *See* Docs. #593, #597. Absent a dispute that the challenged opinions have not been disclosed, the motion will be denied—nevertheless, all "experts will be held to the opinions disclosed in their reports as required by Fed. R. Civ. P. 26." *Keys v. Lloyds*, No. 2:14-CV-00643, 2015 WL 11027034, at *1 (E.D. Tex. Oct. 20, 2015) (denying blanket motion "to preclude offering the opinions and mental impressions of any expert witness or the bases for the expert's opinions and mental impressions, which have not been disclosed in the experts reports or depositions" with the caveat that experts must limit their testimony to that disclosed in their reports). This motion [531] is **DENIED**.

### Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that

1. Defendant Oliver's *Motion in Limine* [515] is Defendant Oliver's *Motion in Limine* [515] is **GRANTED in part** and **DENIED in part**. Oliver's first, third, four, and fifth grounds of his motion in limine are **GRANTED** as unopposed; Oliver's eighth ground is **GRANTED**; Oliver's sixth and seventh grounds are **GRANTED in part** and **DENIED in part**; and Oliver's second ground is **DENIED**.
2. Defendant Oliver's *Motion in Limine* [517] is **GRANTED**.
3. Defendant Oliver's *Motion in Limine* [519] is **DENIED**.
4. Defendant Oliver's *Motion in Limine* [521] is **GRANTED**.
5. Defendant Oliver's *Motion in Limine* [523] is **DENIED**.
6. Defendant Oliver's *Motion in Limine* [525] is **GRANTED**.
7. Defendant Oliver's *Motion in Limine* [527] is **GRANTED in part and DENIED in part.** It is GRANTED to the extent that Kelli cannot argue that cardioversion treatment was an appropriate treatment for Troy and DENIED in all other respects.

8.   Defendant Oliver's *Motion in Limine* [529] is **DENIED**.

9.   Defendant Oliver's *Motion in Limine* [531] is **DENIED**.

SO ORDERED, this the 7th day of March, 2019.


                                        **/s/ MICHAEL P. MILLS**
                                        **UNITED STATES DISTRICT JUDGE**
                                        **NORTHERN DISTRICT OF MISSISSIPPI**