# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**KELLI DENISE GOODE, Individually, and also as the Personal Representative of Troy Charlton Goode, Deceased, and as Mother, Natural Guardian, and Next Friend of R.G., a Minor, and also on behalf of all similarly situated persons**  **PLAINTIFF**

**V.**  **NO. 3:17-CV-60-DMB-RP**

**THE CITY OF SOUTHAVEN, et al.**  **DEFENDANTS**

## ORDER

Before the Court is the motion in limine of the City of Southaven, Todd Baggett, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham, Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, and Richard A. Weatherford (collectively, the "Southaven defendants"). Doc. #533.

### Relevant Procedural History

On June 7, 2018, the Southaven defendants filed the instant motion along with a supporting memorandum brief. Docs. #533, #534. The motion contains six subparts. Doc. #534 at 1–2. A week later, Kelli Denise Goode responded in opposition. Doc. #552.

### Standard

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-CV-129, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (quotation marks and citations omitted). Rulings on a motion in limine "are not binding on the trial judge, and the judge

1

may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

**<u>Analysis</u>**

The Southaven defendants move to exclude at trial: (1) "Evidence that any other law enforcement or EMS agencies' policies recommend against the use of hog-tie or prone restraint"; (2) "Sections in Ron L. Crew's Law Enforcement Training materials copyrighted 2001-2006 relating to blanket unsupported statements connecting positional asphyxia to hog-tie restraint"; (3) "Opinion testimony from witness Charles Rogers relating to the conduct of Troy Goode during his encounter with police officers on Goodman Road"; (4) "Irrelevant and overly prejudicial photographs …"; (5) "[The use of] the terms 'hogtie' and/or 'torture'"; and (6) "Certain testimony and/or opinions by Robert C. Krause …." Doc. #534 at 1–2. Each exclusion moved for will be addressed in turn.

**A. First Ground**

The Southaven defendants move to prohibit Kelli from offering testimony through her police tactics expert, Darrell Coslin, or any other witness "of other law enforcement agencies' policies and procedures that recommend against the use of a hogtie or other prone restraint." *Id*. at 2. The Southaven defendants argue that because "the Fifth Circuit and courts nationwide have held that the use of the hogtie restraint or 4-point restraint is permissible to restrain a suspect who remains resistant after lower levels of restraint are attempted," the fact that "other departments may not support the use of the hogtie restraint … has no relevance to the use of the 4-point restraint by Southaven officers in this case." *Id*. at 5. Although the Southaven defendants do not cite any Federal Rule of Evidence in support of their argument, it suggests that the challenged evidence is not relevant under Federal Rules of Evidence 401 and 402 and that, even if relevant, the evidence

should be excluded under Federal Rule of Evidence 403—or pursuant to the Court's inherent authority—given its danger of confusing or misleading the jury. *Id.*

In response, Kelli contends that the instant motion should not be considered on the merits because it "seeks to circumvent the deadline for *Daubert* motions by mischaracterizing [the motion as] a Motion in Limine." Doc. #552 at 2. Moreover, Kelli argues that the instant motion would fail even if considered on the merits because it selectively cites Fifth Circuit caselaw. *Id.* at 3.

The Case Management Order set a January 23, 2018, deadline for submitting *Daubert* challenges. Doc. #389. As Kelli argues, other courts have determined that challenges to an expert's use of police policies implicates Rule 702 and *Daubert*. *See Clayton Cty. v. Segrest*, 775 S.E.2d 579, 584 (Ga. Ct. App. 2015) (applying state analogue to *Daubert* to determine the admissibility of police policies relied on by expert witnesses). However, even if this were not an untimely *Daubert* motion, it would nevertheless fail on the merits.

Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The rule that a "district court is accorded a wide discretion in determining the admissibility of evidence … is particularly true with respect to Rule 403 since it requires …balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

"The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties—both under the Federal Rules of Evidence and as part of the Court's inherent authority." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2018 WL 1586276, at *18 (N.D. Cal. Apr. 2, 2018). This challenge implicates two inquiries: Rule 403 regarding testimony and the Court's inherent authority regarding attorney conduct. *See Navellier v. Sletten*, 262 F.3d 923, 941-42 (9th Cir. 2001) (limits on parties' presentation of evidence within "the broad discretion that the district court had to manage the trial"); *Anderson v. Ford Motor Co.*, No. 2:06-CV-741, 2014 WL 4655289, at *1 (D. Utah Sept. 16, 2014) (prohibiting plaintiff from using several terms to describe the defendant pursuant to Rule 403). As a threshold matter, an attorney's characterization or description of a restraint is not evidence, so it is not clear that Rule 403 would support excluding the use of the term "hogtie." To the extent that Rule 403—or, alternatively, the Court's inherent authority—might apply to this issue, Southaven has not briefed an argument for the Court to rule on. *See Dennis v. ESS Support Servs. Worldwide*, No. CV 15-690, 2016 WL 1408580, at *2 (E.D. La. Apr. 11, 2016) ("While brevity is typically a virtue, the Court will not address the merits of defendants' Rule 403 challenge, without a more detailed description of Rule 403's applicability to specific aspects of [the challenged witness'] report and testimony."). Thus, the Court cannot grant this motion pursuant to either Rule 403 or its inherent authority due to inadequate briefing.

In support of its motions, the Southaven defendants do cite to cases in which police officers who had placed a detainee in a four-point restraint were granted qualified immunity from claims brought under § 1983. "Claims based on violations of police procedure, however, are not actionable under § 1983." *Medina v. Cram*, 252 F.3d 1124, 1133 (10th. Cir. 2001). Thus, the Southaven defendants cite a series of cases addressing individual officer liability that are not on-

point regarding whether a municipality is liable under *Monell*[1] for its policies or procedures, which are relevant as to Sotuhaven's *Monell* liability. Any danger under Rule 403 that such evidence could confuse or mislead the officers with regard to the liability of individual officers can be cured through a limiting instruction. *See United States v. Guerra*, 402 F. App'x 973, 975 (5th Cir. 2010) ("the risk of unfair prejudice is substantially lowered by a district court's limiting instruction"). For these reasons, the Southaven defendants' first ground is denied.

### B. Second Ground

The Southaven defendants move to exclude the bolded portion of *Police Subject Control – Basic Manual,* excerpted below, that is written by Ron L. Crew and used by the Mississippi Law Enforcement Training Academy, which trains Mississippi police officers including those from Southaven:[2]

> *Cautions*. There are two main areas of concern in the application of Handcuffs. One is "Positional Asphyxia". When a violator has been arrested, and handcuffed in a face-down position, Officers must get the suspect up to at least a "seated" position as soon as possible. **People who remain on their stomach for varying periods of time will suffocate themselves due to their own body weight**. Getting large people up is as simple as having them cross one leg and pushing that same side shoulder forward while directing them to stand.

Doc. #533-1 at 5 (emphasis added). The Southaven defendants contend that the bolded statement is generalized, unsupported, and—standing alone—inaccurate. *Id*. at 6. Moreover, they contend that there is overwhelming evidence contravening the assessment that "[p]eople who remain on

---

[1] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").
[2] Although new Mississippi police officers are sent to the Mississippi Law Enforcement Training Academy, a Mississippi police officer need not have attended this academy if they graduated from a comparable academy in another state—as is the case with some of the officers sued in this case. *See* Doc. #477 at 2 (representing that police officers sued in this matter attended not only the Mississippi State Law Enforcement Officers' Training Academy but also the Arkansas State Law Enforcement Officers' Training Academy and the Tennessee State Law Enforcement Officers' Training Academy). However, Kelli's motion represents that "[e]very Southaven police officer was trained in part at this facility." Doc. #552 at 4.

their stomach for varying periods of time will suffocate themselves due to their own body weight" given "testimony from experts on both sides of this case that establishes that being restrained on your stomach for a long period of time will not cause suffocation." *Id*.

In response, Kelli submits that the training manual is necessary to meet her "burden to demonstrate deficient training for liability to attach to the governmental entity" and thus whether "police officers were not instructed on the hazards of hogtying for an extended period in a prone position is highly relevant." Doc. #552 at 5. Kelli also argues that it would be "patently ridiculous" to allow Southaven to put on evidence that their officers followed official policy and training while "exclud[ing] a portion of the training manual detrimental to Southaven's position." *Id*.

Although the Southaven defendants do not cite any Federal Rule of Evidence in support of their argument, they suggest that the challenged evidence is not relevant under Federal Rules of Evidence 401 and 402 and that, even if relevant, the evidence should be excluded under Federal Rule of Evidence 403 given its danger of confusing or misleading the jury. *Id*. at 6.

The Court agrees with Kelli that the training handbook is relevant to her failure to train claim because it was used to instruct police officers on the restraints implicated in this case. *See, e.g.*, *Foradori v. Harris*, 523 F.3d 477, 508 (5th Cir. 2008) ("the district court admitted the training manual's statement for the relevant purpose of showing [restaurant's] failure to train and inculcate its employees in their responsibility for protecting customers from risks attendant to on-premises conflicts"). Further, any prejudice flowing from the fact that the manual could confuse or mislead the jury can be cured with a limiting instruction. *See Guerra*, 402 F. App'x at 975 ("the risk of unfair prejudice is substantially lowered by a district court's limiting instruction"). For these reasons, the Southaven's second ground will be denied.

## C. Third Ground

The Southaven defendants move to prohibit Kelli from offering the "opinion testimony" of Charles Rogers "relating to the conduct of Troy Goode during his encounter with police officers." Doc. #534 at 6. Rogers drove past the scene of Troy's confrontation with the Southaven Police Department on Goodman Road, testifying that he "was able to actually tell that this [police] dog was pursuing the gentleman … he was trying to escape the dog." Doc. #533-2 at 36.

The Southaven defendants object to Rogers' testimony that "Troy … seemed to be surrendering to officers as [Rogers] passed by." Doc. #534 at 7. The Southaven defendants, without citing to any Rule of Evidence, contend that Rogers would offer impermissible opinion testimony because: (1) "Rogers actually testified that he passed by the scene … for roughly ten seconds with the window rolled up"; (2) "He did not hear any comments by officers or Troy Goode and was not aware of what stage of the encounter he observed"; and (3) "Rogers indicated that Troy … was at the back of the vehicle backing away from the officer … controlling the K-9 [and] also confirmed that he never saw the K-9 off the leash and that the K-9 was being controlled by an officer the entire time that he observed the events." Doc. #534 at 7 (citing Doc. #533-2 at 40–43).

In response, Kelli argues that Rogers may offer testimony "that he saw Mr. Goode raise his hands into the air in apparent compliance with police orders [and] concerning Mr. Goode's effort to evade a very large and aggressive police dog … ordered to attack" him as "[r]eliance upon eye witnesses' interpretive testimony concerning a decedent's obedience to police is admissible." Doc. #552 at 5–6.

Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and

7

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"Under Rule 701, a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) (internal quotation marks omitted). "In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Id*. "If these two requirements are met a layman can under certain circumstances express an opinion even on matters appropriate for expert testimony." *Id*. (internal quotation marks omitted).

Here, Rogers possesses "personalized knowledge of the facts underlying [an] opinion," that has "a rational connection to those facts." Namely, Rogers witnessed an interaction between Troy and the Southaven Police Department—in which a police canine pursued Troy—that is central to this case. To the extent that Rogers was moving past the scene for a short period of time, could not hear what was occurring, or did not perceive what transpired before and after the scene he witnessed, this argument is directed towards the weight, not admissibility, of his testimony. For these reasons, the Southaven's third ground will be denied.

**D. Fourth Ground**

The Southaven defendants move to exclude three series of photographs depicting Troy as "irrelevant and overly prejudicial" pursuant to Federal Rules of Evidence 401, 402, and 403. Doc. #534 at 7–8. The first set of 127 photographs, produced by Kelli, "depict[s] Troy … with his family, friends, and engaged in a number of activities." Doc. #534 at 8; *see* Doc. #533-3. The second set of 59 photographs, taken by the Southaven Police Department, "depict[s] Troy … at Baptist Memorial-Desoto after he had passed away." Doc. #534 at 9; *see* Doc #533-4. The third set of 22 photographs are associated with an autopsy of Troy performed by Deputy Chief

8

Mississippi Medical Examiner Erin Barnhart, M.D. Doc. #534 at 10; *see* Doc. #533-5. Each set of photographs will be addressed in turn.

### i. First set

The Southaven defendants argue that none of the first set of photographs "are relevant to the issue of liability or damages and instead would only serve the purpose of potentially inflaming the jury and attempting to invoke sympathy toward" Troy. Doc. #534 at 8. Furthermore, they argue that "[t]o the extent these photographs have any limited relevancy, the probative value of such photographs is substantially outweighed by their prejudicial effect, as well as the potential for these photographs to mislead and/or confuse the jury." *Id*. at 9.

In response, Kelli argues that since the defendants have inaccurately "depicted [Troy] as a chronic drug user and person of violence … Plaintiff should not be prohibited from using demonstrative evidence of [Troy's] true nature." Doc. #552 at 6.

Federal district courts in Mississippi applying the state's wrongful death statute have reasoned that a "[p]laintiff is entitled to present to the jury evidence bearing on the personality and character of the decedent [such as] photographs of, and testimony about, the decedent during her life." *Bridges v. Enter. Prod. Co.*, No. CIVA3:05-CV-786, 2008 WL 80401, at *2 (S.D. Miss. Jan. 4, 2008); *see also Motorola Commc'ns & Elecs., Inc. v. Wilkerson*, 555 So. 2d 713, 721 (Miss. 1989) ("allowing into evidence the so-called 'personal photo album' of the decedent [as] directly relevant to the issue of damages"). The challenged photographs are thus relevant because they implicate Mississippi's wrongful death statute. Accordingly, the Southaven defendants' motion in limine will be denied as to the first set of photographs.

### ii. Second set

The Southaven defendants argue that the second set of photographs "have no relevancy to any issue in this case[] and would … only serve the purpose of inflaming the jury and invoking sympathy." Doc. #534 at 9. Furthermore, "[t]o the extent these photographs have any limited relevancy, the probative value of such photographs is substantially outweighed by their prejudicial effect, as well as the potential for these photographs to mislead and/or confuse the jury." *Id*.

In response, Kelli argues that "[t]he fact that photographs depict an unpleasant or gruesome scene is not a bar to admission when the photos are relevant." Doc. #552 at 7. By contrast, Kelli concedes that "[w]here the exclusive purpose of the photographs is to influence and prejudice the jury, they should be excluded." *Id*. "[Fifth Circuit] caselaw indicates that admitting gruesome photographs of the victim's body [in a prosecution for murder] ordinarily does not rise to an abuse of discretion where those photos have nontrivial probative value." *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007); *see also Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998) ("Although the [photographs of decedent's remains] had some probative value, it was within the district court's discretion to exclude the evidence after weighing that probative value against the risks of presenting these photographs to the jury."). Here, Kelli has not argued that the photographs possess nontrivial probative value—thus, given their nature, the second set of photographs will be excluded under Rule 403. Accordingly, the Southaven defendants' motion in limine will be granted as to the second set of photographs.

### iii. Third set

The Court has addressed the admissibility of the autopsy photographs by separate order denying Lemuel D. Oliver, M.D.'s motion in limine to exclude autopsy photographs. As such, the Southaven defendants' motion will be denied as moot as to the third set of photographs.

### E. Fifth Ground

The Southaven defendants move pursuant to Federal Rule of Evidence 403 to prohibit Kelli from using the terms "hogtie" or "torture" at trial. Doc. #534 at 10. The Court has excluded the use of the term "torture" by separate order granting in part and denying in part Oliver's motion in limine to exclude certain testimony and evidence of lay witnesses. As such, the Southaven defendants' motion to exclude the use of the term "torture" will be denied as moot. That leaves the Court to determine whether Kelli may use the term "hogtie" at trial.

The Southaven defendants argue that that the term four-point restraint—rather than "hogtie," which is used frequently in Kelli's submissions—accurately describes the restraint Troy was placed in. According to the Southaven defendants:

> Former Southaven Police Chief Tom Long … explained that a 4-point restraint includes handcuffs and leg shackles attached behind the back, but that, in contrast to the "hog-tie" restraint, a 4-point restraint includes a chain that loops through the leg shackles and attaches to the handcuffs to allow for some slack and movement of the legs.

Doc. #533-7 at 14–16. Such a distinction is also reflected in the deposition testimony of Officer Todd Baggett. *See* Doc. #533-8 at 12–14. Thus, the Southaven defendants argue that any characterization of Troy's restraint as a "hog-tie" must be excluded under 403 as incorrect, misleading, and confusing to the jury. Doc. #534 at 11.

In response, Kelli argues that describing Troy's restraint as a hog-tie is accurate and that "[t]he Fifth Circuit has repeatedly noted that this means of maximal restraint is referred to as a 'hogtie.'" Doc. #552 at 8–9.

On the one hand, the Court recognizes that the use of the term four-point restraint poses less prejudice that the term "hogtie." On the otherhand, the Court does not believe that the probative value of the term "hogtie" substantially outweighs its prejudicial effect. This conclusion

11

is bolstered by the fact that the Fifth Circuit frequently uses the term "hogtie" in its decisions. Moreover, the Fifth Circuit recently described the "four-point restraint" as "the more formal term for 'hog-tying,'" suggesting that they refer to the same thing. *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 182–83 (5th Cir. 2016). Perhaps most significantly, the Fifth Circuit has not attributed any weight to the distinction between a "hogtie" and the restraint that the Southaven defendants argue is properly called a four-point restraint; in fact, the Fifth Circuit has used the term "hogtie" to characterize what the Southaven defendants argue is properly termed a four-point restraint. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 443 (5th Cir. 1998) (describing a "hog-tie" as a "a nylon rope with a loop on one end and a clasp on the other"). For these reasons, the Southaven defendants' fifth ground will be denied.

**F. Sixth Ground**

The Southaven defendants move to exclude "certain testimony and/or opinions offered by Robert C. Krause," an expert witness on Emergency Medical Services designated by Kelli. Doc. #534 at 12. The Southaven defendants specifically seek to exclude testimony: (1) that is speculative; (2) "regarding a medical diagnosis and/or causation [that] may only be rendered by a medical doctor"; and (3) concerning the state of mind of Stacie Graham. *Id*. at 12–15. The Southaven defendants do not cite to any Federal Rule of Evidence in support of their argument.

In response, Kelli argues that although the Southaven defendants did not file a *Daubert* motion challenging Krause's testimony, "Southaven seeks to circumvent the deadline for *Daubert* motions by mischaracterizing [this motion] as a Motion in Limine." Doc. #552 at 10. The Court agrees. The Case Management Order set a January 23, 2018 deadline for submitting *Daubert* challenges. In fact, this Court has already ruled on a *Daubert* challenge to Krause's testimony

brought by Oliver. *See* Doc. #597. Accordingly, the Southaven defendants' sixth motion in limine is untimely and it will be denied for that reason.

## Conclusion

For the reasons above, the motion [533] is **GRANTED in part** and **DENIED** in part**.** It is granted to the extent that the second set of photographs referenced in the fourth ground will be excluded. It is denied in all other respects.

**SO ORDERED**, this 7th day of March, 2019.

                                        **/s/ MICHAEL P. MILLS**
                                        **UNITED STATES DISTRICT JUDGE**
                                        **NORTHERN DISTRICT OF MISSISSIPPI**