# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**KELLI DENISE GOODE, Individually, and also as the Personal Representative of Troy Charlton Goode, Deceased, and as Mother, Natural Guardian, and Next Friend of R.G., a Minor, and also on behalf of all similarly situated persons**                                    **PLAINTIFF**

**V.**                                                                      **NO. 3:17-CV-60-MPM-RP**

**THE CITY OF SOUTHAVEN, et al.**                                          **DEFENDANTS**


## <u>ORDER</u>

This cause comes before the Court on Defendant Baptist Memorial Hospital–Desoto's ("BMH-D") motions in limine [535] [537] [539] [541].

### Motion in Limine Standard

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (internal citations omitted). When ruling upon motions in limine, the Court notes that "[e]vidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Id.* Rulings on a motion in limine "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### A. BMH-D's First Motion in Limine [535]

On June 7, 2018, BMH-D filed the instant motion along with a supporting memorandum. Docs. #535, #536. The motion contains six subparts. Doc. #536 at 2. Six days later, the City of Southaven, Todd Baggett, Jeremy Bond, Tyler Price, Joel Rich, Jason Scallorn, Stacie J. Graham,

Mike Mueller, William Painter, Jr., Bruce K. Sebring, Joseph Spence, and Richard A. Weatherford (collectively, the "Southaven Defendants") joined subparts I and II of the motion. Doc. #546. The next day, Kelli Denise Goode responded in opposition. Doc. #567.

> BMH-D moves to exclude at trial:
>
> (1) undisclosed expert opinions on the standard of care; (2) undisclosed expert opinions linking breaches of the standard of care to the cause of Mr. Goode's death; (3) undisclosed and irrelevant expert opinions regarding 42 CFR § 482.13; (4) expert opinions on BMH-D's "Protocol"; (5) expert opinions on BMH-D's "Policies"; (6) violation of regulations governing patient rights; and (7) expert opinions on Haldol and Ativan.

Doc. #536 at 2. Each exclusion moved for by BMH-D will be addressed in turn.

### i.     First Ground

BMH-D moves to exclude undisclosed expert opinions on the standard of care. *Id*. at 3. BMH-D argues that although Kelli has only disclosed one standard of care expert, "several of her other experts … have offered undisclosed opinions concerning the standard of care during depositions." *Id*. In response, Kelli asserts that the motion is an untimely *Daubert* motion that should be denied on that basis.

"[O]pinions based on undisclosed facts, methodology, and principals do not allow the Court to examine the soundness of [an] expert's conclusions under *Daubert* and will not be allowed at trial." *Flagstone Dev. LLC v. Rocky Mountain Timberlands, LLC*, No. CV 08-100, 2017 WL 3820948, at *2 (D. Mont. Aug. 31, 2017). However, because undisclosed expert opinions run afoul of *Daubert* does not mean that such opinions must be exclusively challenged through *Daubert*, as Federal Rule of Evidence 26 also requires timely disclosure of expert opinions. Generally, motions challenging expert opinions as undisclosed involve the introduction of new opinions at a late stage in litigation, which is not the case here. *See, e.g.*, *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329, 2009 WL 2252129, at *9 (N.D. Okla. July 24, 2009) (addressing

challenge to undisclosed expert opinions—some of which appeared to have been taken from a previously disclosed report—that were presented an affidavit in support of a response in opposition to defendants' motion of the affidavit).

Here, BMH-D has not pointed to "undisclosed opinions concerning the standard of care [offered] during deposition" that were not addressed by the Court in its rulings on Lemuel D. Oliver, M.D. and BMH-D's timely *Daubert* challenges to Kelli's experts in which the Court prohibited undisclosed standard of care opinions. *See* Docs. #593, #597. Absent a dispute that the challenged opinions have not been disclosed, this first ground will be denied—nevertheless, all "experts will be held to the opinions disclosed in their reports as required by Fed. R. Civ. P. 26." *Keys v. Lloyds*, No. 2:14-CV-00643, 2015 WL 11027034, at *1 (E.D. Tex. Oct. 20, 2015) (denying blanket motion "to preclude offering the opinions and mental impressions of any expert witness or the bases for the expert's opinions and mental impressions, which have not been disclosed in the experts reports or depositions" with the caveat that experts must limit their testimony to that disclosed in their reports).

### ii.    Second Ground

BMH-D moves to exclude undisclosed expert opinions linking breaches of the standard of care to the cause of Troy's death. Doc. #536 at 4. BMH-D argues that "any attempt by Mrs. Goode to elicit testimony by any of her experts which attempts to link the alleged breaches of the standard of care to the death of Mr. Goode … is inadmissible and should be precluded." *Id*. In response, Kelli asserts that the motion is an untimely *Daubert* motion and that BMH-D's argument "is without basis because the Federal Rules simply don't demand the specificity urged here by BMH." Doc. #567 at 3.

The Court agrees with Kelli that this motion fails on two grounds. First, as discussed above with regard to Ground One, BMH-D does not specify the opinions it believes have not been disclosed—considering the Court has addressed undisclosed standard of care opinions linking breaches of the standard of care to the cause of Troy's death in its rulings on Lemuel D. Oliver, M.D. and BMH-D's timely *Daubert* challenges to Kelli's experts. *See* Docs. #593, #597. Second, to the extent that BMH-D argues that there is no nexus in the amended complaint between Kelli's offered standard of care testimony and her offered causation testimony, that argument is unavailing because Kelli has provided "fair notice of what the claim is and the grounds upon which it rests" through her amended complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alterations omitted); *see Marshall v. MarOpCo, Inc.*, 223 F. Supp. 3d 562, 566 (N.D. Tex. 2017) ("federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits") (internal quotation marks omitted). For these reasons, BMH-D's second ground will be denied.

### iii.    Third Ground

BMH-D moves to exclude "undisclosed and irrelevant expert opinions regarding 42 CFR § 482.13." Doc. #536 at 4. BMH-D argues that Kelli

> made no allegation in her Amended Complaint nor disclosed any expert testimony that BMH-D breached the standard of care through violating 42 CFR § 482.13 or linking such a breach to the cause of Mr. Goode's death. Accordingly, any expert testimony concerning violations of 42 CFR § 482.13 is irrelevant, inadmissible, and should be excluded.

*Id.* (emphasis omitted).

In response, Kelli asserts that the motion is an untimely *Daubert* challenge that should be denied on that basis. Doc. #567 at 4. Furthermore, Kelli argues that she has "detailed her allegations of the breaches of the standard of care with respect to BMH's violation of 42 CFR §

482.13 in the Amended Complaint" and that her standard of care expert's deposition testimony "establishes that BMH was required to monitor Troy … one-on-one when he was in the hog tie position." *Id*. at 4–5.

First, as discussed above with regard to Ground One, BMH-D does not specify the opinions it believes have not been disclosed.  Second, the Court agrees with Kelli that her amended complaint provided fair notice concerning violations of 42 CFR § 482.13.  *See* Doc. #107 at 27–28.  Third, the Court, by separate order, has rejected a similar challenge to the admissibility of hospital policies brought by Oliver.  In that order, the Court ruled that in the Fifth Circuit internal policies and guidelines, although not themselves determinative of the standard of care, "are considered relevant evidence and may be properly introduced" as "evidence of the standard of care." *Shoemake v. Rental Serv. Corp.*, No. CIVA106CV426, 2008 WL 345498, at *1 (S.D. Miss. Jan. 30, 2008) (citing *Quijano v. United States*, 325 F.3d 564, 568 (5th Cir. 2003) (applying Texas state law).  Mississippi law is in accord.  *See Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 665 (Miss. 2002) (violation of internal hospital regulations "may serve as evidence of negligence" but "do not establish a legal duty of care to be applied in a civil action").  For these reasons, BMH-D's third ground will be denied.

### iv.    Fourth Ground

BMH-D moves to exclude expert opinions on BMH-D's protocols, arguing that Kelli's standard of care expert has offered opinions on BMH-D protocol lacking a basis in the amended complaint and without having "reviewed any hospital 'protocol.'" *Id*. at 4–5.  In response, Kelli asserts that the motion is an untimely *Daubert* motion that should be denied on that basis.  Doc. #567 at 1.  Furthermore, Kelli argues that "the Federal Rules simply don't demand the specificity urged here by BMH[-D]." *Id*. at 3.

The Court agrees with Kelli that this filing is a veiled, untimely *Daubert* motion as it is challenging the standard of care testimony of Kelli's expert witness. In fact, the Court has already rejected a *Daubert* challenge brought by BMH-D against Kelli's designated standard of care expert. *See* Doc. #597. Moreover, Kelli's amended complaint provided fair notice regarding her claim and the applicability of BMH-D protocol, even pointing to BMH-D's failure to follow the "ACLS protocol" as a breach of the standard of care. Doc. #107 at 60–61. For these reasons, BMH-D's fourth ground will be denied.

### v. Fifth Ground

BMH-D moves to exclude expert opinions on BMH-D's policies. Doc. #536 at 5. BMH-D argues that the "Amended Complaint … contains no allegations that BMH-D violated its own policies or that such a violation was a breach of the standard of care [and Kelli] has not disclosed any expert opinions as to such a breach or linking such a breach to [Troy's] death." *Id.* (emphases omitted). In response, Kelli asserts that the motion is an untimely *Daubert* motion that should be denied on that basis. Doc. #567 at 1. Furthermore, Kelli argues that "the Federal Rules simply don't demand the specificity urged here by BMH[-D]" and BMH-D, in fact, violated its own policies. *Id.* at 3, 5–6.

The Court agrees with Kelli that this filing is a veiled, untimely *Daubert* motion—as it is challenging the standard of care and causation testimony of Kelli's expert witnesses—and that her amended complaint provided sufficient notice to BMH-D regarding her claim and the applicability of BMH-D policies. *See* Doc. #107 at 61. Moreover, as discussed above regarding Kelli's third motion in limine, hospital policies are considered relevant evidence in medical malpractice cases in Mississippi and the Fifth Circuit and may be properly introduced as evidence of the standard of

care.  For these reasons, BMH-D's fifth ground will be denied—however, experts will be held to the opinions disclosed in their reports.

### vi.    Sixth Ground

BMH-D moves to exclude evidence of violations of regulations governing patient rights because Kelli "has not disclosed any expert testimony that BMH-D breached the standard of care through violating the requirements of federal regulations governing patient rights or linking such a breach to the cause of [Troy's] death."  Doc. #536 at 5–6 (internal quotation marks and emphasis omitted).  In response, Kelli asserts that the motion is an untimely *Daubert* motion that should be denied on that basis.  Doc. #567 at 1.  Furthermore, Kelli argues that "the Federal Rules simply don't demand the specificity urged here by BMH[-D]" and BMH-D, in fact, violated its own policies.  *Id*. at 3, 5–6.

The Court agrees with Kelli that this filing is a veiled, untimely *Daubert* motion—as it is challenging the standard of care and causation testimony of Kelli's expert witnesses—and that her amended complaint provided sufficient notice to BMH-D regarding her claim and the applicability of BMH-D policies.  *See* Doc. #107 at 60–61.  Moreover, as discussed above regarding Kelli's third motion in limine, hospital policies are considered relevant evidence and may be properly introduced as evidence of the standard of care.  For these reasons, BMH-D's sixth ground will be denied.

### vii.   Seventh Ground

BMH-D moves to exclude expert opinions on Haldol and Ativan on two grounds:  "(1) Mr. Goode should have been monitored after the administration of Haldol and Ativan for respiratory and cardiac status changes; and (2) Mr. Goode's death was caused, in part, by the administration of Haldol and Ativan."  Doc. #536 at 6.  In response, Kelli asserts that the motion is an untimely

*Daubert* motion that should be denied on that basis and that "[t]he failure to appropriately monitor a patient in restraints is mentioned throughout the Amended Complaint."  Doc. #567 at 6–7

Like those above, this submission is plainly a veiled, untimely *Daubert* challenge. Moreover, the Court has already issued an order addressing Oliver's *Daubert* challenge to expert testimony on Haldol and Ativan here.  In that order, the Court precluded one of Kelli's medical causation experts from offering causation opinions on Haldol and Ativan that had not been pled in the amended complaint.  *See* Doc. #592 at 16–17.  Thus, the relief sought by BMH-D has already been granted by the Court.  However, no order of the Court has precluded testimony that Troy should have been monitored, as this claim is presented in the amended complaint.  *See* Doc. #107 at 26.  For these reasons, BMH-D's seventh motion ground will be denied.

For the reasons above, this motion [535] is **DENIED**.

### B.  BMH-D's Second Motion in Limine [537]

In this four subpart motion, BMH-D moves to exclude at trial evidence and argument as to: "(1) 42 C.F.R. § 482.13; (2) the Plaintiff's unsupported argument that BMH-D lacked policies, failed to train its employees, and/or wrongfully trained its employees as the requirements of 42 C.F.R. § 482.13; (3) that BMH-D violated its own 'protocol' [and] 'policies.'"  Doc. #538 at 2. Each exclusion moved for by BMH-D will be addressed in turn.

#### i.  First Ground

BMH-D argues that opinions offered by Kelli's designated standard of care expert Mark Fowler, M.D., "that 42 C.F.R. § 482.13 required BMH-D to monitor one-to-one Mr. Goode while in restraints [should be excluded because] this alleged breach of the standard of care is not set forth in the Amended Complaint or any of her expert disclosures."  *Id*.  BMH-D argues these opinions should be excluded as irrelevant or, alternatively, under Federal Rule of Evidence "because the

probative value is substantially outweighed by the danger of unfair prejudice …, confusion of the issues or potential for misleading the jury."  *Id*.

In response, Kelli argues that the amended complaint "alleges that the use of handcuffs and other chain type restrain devices violates 42 C.F.R. § 482.13(e)" and that "Fowler's expert disclosure specified that BMH violated 42 C.F.R. § 482.13 in failing to monitor Troy's hear[t] and breathing after [the] administrating of chemical restraints."  Doc. #568 at 2.  Kelli also argues that the instant motion is an untimely *Daubert* motion and that 42 C.F.R. § 482.13 is relevant to her claims.  *Id*.  Further, Kelli argues that "[f]ederal pleading standards do not require complaints to state or identify legal theories" and "[t]he purpose of the complaint is to merely put the defendant on notice of the claims."  *Id*.

Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The rule that a "district court is accorded a wide discretion in determining the admissibility of evidence … is particularly true with respect to Rule 403 since it requires …balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

"[O]pinions based on undisclosed facts, methodology, and principals do not allow the Court to examine the soundness of [an] expert's conclusions under *Daubert* and will not be allowed

at trial." *Flagstone Dev. LLC v. Rocky Mountain Timberlands, LLC*, No. CV 08-100, 2017 WL 3820948, at *2 (D. Mont. Aug. 31, 2017). However, because undisclosed expert opinions run afoul of *Daubert* does not mean that such opinions must be exclusively challenged through *Daubert*, as Federal Rule of Evidence 26 also requires timely disclosure of expert opinions. Generally, motions challenging expert opinions as undisclosed involve the introduction of new opinions at a late stage in litigation, which is not the case here. *See, e.g.*, *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329, 2009 WL 2252129, at *9 (N.D. Okla. July 24, 2009) (addressing challenge to undisclosed expert opinions—some of which were appeared to have been taken from previously disclosed report—that were presented an affidavit in support of a response in opposition to defendants' motion of the affidavit).

Here, BMH-D has not pointed to undisclosed opinions that 42 C.F.R. § 482.13 required BMH-D to monitor Mr. Goode one-to-one while in restraints and the Court has already ruled on Lemuel D. Oliver, M.D.'s *Daubert* challenge to Fowler's testimony and expert report—which had been timely supplemented prior to the expert disclosure deadline. *See* Doc. #593. Absent a dispute that the challenged opinions have not been disclosed, this motion will be denied—nevertheless, all "experts will be held to the opinions disclosed in their reports as required by Fed. R. Civ. P. 26." *Keys v. Lloyds*, No. 2:14-CV-00643, 2015 WL 11027034, at *1 (E.D. Tex. Oct. 20, 2015) (denying blanket motion "to preclude offering the opinions and mental impressions of any expert witness or the bases for the expert's opinions and mental impressions, which have not been disclosed in the experts reports or depositions" with the caveat that experts must limit their testimony to that disclosed in their reports).

Furthermore, the amended complaint provided fair notice concerning violations of 42 CFR § 482.13. *See* Doc. #107 at 27–28. Moreover, the Court, by separate order, has rejected a similar

challenge to the admissibility of hospital policies brought by Oliver.  In that order, the Court ruled that in the Fifth Circuit internal policies and guidelines, although not themselves determinative of the standard of care, "are considered relevant evidence and may be properly introduced" as "evidence of the standard of care."  *Shoemake v. Rental Serv. Corp.*, No. CIVA106CV426, 2008 WL 345498, at *1 (S.D. Miss. Jan. 30, 2008) (citing *Quijano v. United States*, 325 F.3d 564, 568 (5th Cir. 2003) (applying Texas state law).  Mississippi law is in accord.  *See Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 665 (Miss. 2002) (violation of internal hospital regulations "may serve as evidence of negligence" but "do not establish a legal duty of care to be applied in a civil action").  Thus, this evidence is relevant, and the Court has determined there is no prejudicial effect in the jury hearing about BMH-D's policies implicated in Troy's death.  For these reasons, BMH-D's first ground will be denied.

### ii.  Second Ground

BMH-D moves to exclude several "allegations and contentions not contained in the Amended Complaint" that it contends are irrelevant and inadmissible.  Specifically, BMH-D objects to Kelli's assertion that it can be liable based on the amended complaint due to BMH-D:

> (1) lacking policies and training on the dangers of patients in maximal restraint; (2) failing to train its employees to intervene in situations where the police, within the confines of the hospital, plac[e] a patient's life in jeopardy by restraining in such a manner so as to restrict pulmonary functioning; and (3) "wrongly train[ing]" employees that the requirements of 42 CFR § 482.13(e) did not apply.

Doc. #538 at 2–3.

In response, Kelli contends that her complaint "need not specify in detail each and every claim and theory of liability" but rather must merely "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Doc. #568 at 3.  Moreover, Kelli notes that 42 CFR § 482.13 and hospital policies were specifically raised in the amended complaint.  *See* Doc. #107 at 61.

To the extent that BMH-D argues that there is no basis to address its training based on the amended complaint, that argument is unavailing because Kelli has provided "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alterations omitted); *see Marshall v. MarOpCo, Inc.*, 223 F. Supp. 3d 562, 566 (N.D. Tex. 2017) ("federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits") (internal quotation marks omitted). For these reasons, BMH-D's second ground will be denied. Moreover, the challenged evidence is relevant, and the Court has determined there is no prejudicial effect in the jury hearing about BMH-D's training. For these reasons, BMH-D's second ground will be denied.

### iii.  Third and Fourth Ground

In two separate subparts, BMH-D moves to exclude references to its "protocols" and "policies." Doc. #538 at 3–4. BMH-D argued in its first motion in limine that that expert opinions on its protocols and policies should be excluded. *See* Doc. #535. Here, BMH-D contends that "[i]n addition to the exclusion of expert testimony requested in the first motion, any testimony, reference, argument, or attempt to introduce BMH-D 'protocol' [or 'policies'] should be excluded." Doc. #538 at 3–4. BMH-D contends that such protocol and policies are irrelevant and prejudicial under Federal Rule of Evidence 403.

In response, Kelli asserts that the motion, because it challenges Fowler's testimony, is an untimely *Daubert* motion that should be denied on that basis. Doc. #568 at 4. Further, Kelli argues that "[t]he Amended Complaint contains numerous allegations regarding the defendants' failure to appropriately treat Troy." *Id*. Lastly, Kelli contends that BMH-D's argument should be denied as conclusory because it "fails to explain the basis for the argument that the probative value is

substantially outweighed by the danger of unfair prejudice [and] does not identify what the prejudice is and how that prejudice would be unfair." *Id*. at 5.

To the extent the motion attacks Fowler's testimony, it is a veiled, untimely *Daubert* motion as it is challenging the standard of care testimony of Kelli's expert witness. In fact, the Court has already rejected a *Daubert* challenge brought by BMH-D against Fowler. *See* Doc. #597. Moreover, Kelli's amended complaint provided fair notice regarding her claim and the applicability of BMH-D protocol, even pointing to BMH-D's failure to follow the "ACLS protocol" as a breach of the standard of care. Doc. #107 at 60–61. The amended complaint specifically claims that BMH-D (1) "failed to perform heart monitoring and/or pulse oximetry"; (2) "failed to use appropriate medical restraints"; (3) "failed to appropriately monitor Troy's condition as required by written medical orders" and (4) "permitted non-medical personal exclusive custody and control over Troy." *Id*. at 61. Lastly, as argued by Kelli, BMH-D offers a conclusory argument regarding Federal Rule of Evidence 403 that "fails to explain the basis for the argument that the probative value [of the challenged evidence] is substantially outweighed by the danger of unfair prejudice [and] does not identify what the prejudice is or how that prejudice would be unfair." Doc. #568 at 5. For these reasons, BMH-D's third and fourth grounds as to this motion [537] will be denied.

### C. BMH-D's Third Motion in Limine [539]

On June 7, 2018, BMH-D filed the instant motion along with a supporting memorandum brief. Docs. #539, #540. The motion contains four individual subparts. Doc. #540 at 2–6. Six days later, the Southaven defendants joined subparts II, IV, and V of the motion. Doc. #546. The next day, the Southaven defendants responded in opposition to subpart III of the instant motion, Docs. #564, #565, and Kelli Denise Goode responded in opposition to the entire motion, Doc. #569.

BMH-D moves to exclude at trial "certain deposition testimony and witness statements" by Nikki Goode, Tom Long, Janet Tharpe, along with witness statements transcribed by a private investigator. Doc. #540 at 2–6.

### i. Nikki Goode

During her deposition, Nikki Goode—Troy Goode's mother—testified that a uniformed BMH-D nurse she described as "blond, about five four, very pretty" told her that "[Troy] died face down in that room never unhog-tied. He died face down, policeman walked out and he was still face down." Doc. #539-1 at 80–81. BMH-D moves to exclude "testimony as to statements attributed to the unnamed nurse [as] inadmissible hearsay …." Doc. #540 at 3. In response, Kelli argues that the statement is admissible as a statement by a party opponent because "there is no blanket rule excluding a statement simply because the identity of the speaker has not been ascertained." Doc. #569 at 2.

Hearsay is a statement that (1) the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. Under Federal Rule of Evidence 801(d)(2), a statement offered against an opposing party is not hearsay if the statement:

> (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy.[1]

---

[1] The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

"The Advisory Committee Notes observe that because admissions against a party's interest are received into evidence without many of the technical prerequisites of other evidentiary rules—such as, for example, trustworthiness and personal knowledge—admissibility under this rule should be granted freely." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).

In support of its motion, BMH-D cites Judge Brown's decision in *Stafford v. DeSoto Acquisition and Dev. Corporation*, No. 315CV140, 2017 WL 61941, at *1 (N.D. Miss. Jan. 5, 2017), for the proposition "that statements attributed to an unnamed member of the staff of a defendant were inadmissible hearsay." Doc. #540 at 3. However, *Stafford* does not support the proposition for which it is cited.

In *Stafford*, the plaintiff claimed that after she fell at a restaurant, a member of the "restaurant staff" approached her and admitted that "[w]e realized the light was out and we were aiming to fix it." 2017 WL 61941, at *2. In moving for summary judgment, the defendants objected to this statement as hearsay and argued it should not be considered in evaluating their motions for summary judgment. *Id*. at 3. Plaintiff, however, did not respond to this argument. *Id*. Thus, the Court determined that the statement was hearsay and that the plaintiff, by failing to respond, did not meet her burden of "show[ing] that the statement falls within an exception to the hearsay rule." *Id*. However, the Court clarified "that Stafford's failure to identify the woman precludes the Court from finding the statement was an admission of a party opponent made within the scope of employment." *Id*. at *3 n.3. *Stafford* is, thus, distinguishable from the facts of this case as it involved no argument regarding a party opponent and, even if such an argument were advanced, there were no additional indicia of employment status on the facts.

Here, there is evidence that the statement at issue was made by BMH-D's agent or employee on a matter within the scope of that relationship and while it existed.[2]  The Fifth Circuit has "affirmed the admission of an out-of-court statement by an unidentified individual," where there were indications that the declarant—although unidentified—was an employee of the defendant as he was wearing a hard hat bearing its name.  *Davis v. Mobil Oil Expl. & Prod., S.E., Inc.*, 864 F.2d 1171, 1174 (5th Cir. 1989).  The Fifth Circuit elaborated that

> while a name is not in all cases required, a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D).

*Id*.  "In other words, the proponent of the statement does not necessarily need to identify the declarant, but she must offer sufficient evidence to conclude that Rule 801(d)(2)(D) applies." *Thornton v. J.C. Penney Co.*, No. 3:10CV203, 2011 WL 2565292, at *1 (S.D. Miss. June 28, 2011).  "[T]he inquiry regarding scope of employment was whether the speaker was authorized to act for his principal concerning the matter about which he allegedly spoke." *Kelly v. Labouisse*, 364 F. App'x 895, 896 (5th Cir. 2010) (citing *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991)).  "However, the contents of the statement are not alone sufficient to establish the agency or employment relationship and scope thereof under subdivision (D)." *Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-CV-02347, 2013 WL 2090307, at *6 (N.D. Tex. May 14, 2013) (alterations and internal quotation marks omitted).

---

[2] Under FRE 104(a), "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Under FRE 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."

In *Aumand v. Dartmouth Hitchcock Medical Center*, plaintiff's son James alleged that he "asked [a] 'fellow,' whom he met in the corridor near the nurse's station, whether he had seen or touched [his mother's blue and swollen] hand." 611 F. Supp. 2d 78, 93 (D.N.H. 2009).

> According to James's deposition testimony, the man told him "it was an injection of D–50 into the tissue of her hand. Someone had made a mistake. He had never seen anything like it." But, save for a less-than-certain memory that the man was about the same height as him, James could not recall anything about the man's appearance, such as his hair color, clothing, the characteristics of his voice, or what he was holding or doing at the time. James "just thought he was a nurse, or a physician's assistant, or something because he was the one I met."

After plaintiffs sought to admit this alleged statement under Rule 801(d)(2)(D) against the hospital, it objected that "in light of James's inability to recall anything about the man who made the statement, the plaintiffs cannot show that he even was the hospital's employee, let alone that the subject of the statement, [his mother's] condition, was within the scope of any such employment." *Id*.

The Court held that "James's testimony provides adequate circumstantial evidence that the declarant, first, was an employee of Dartmouth Hitchcock and, second, that the statement concerned a matter within the scope of his employment." *Id*. at 93–94.

> James recalled that the man was standing in the corridor near the nurse's station and, when asked whether he knew about [his mother's] hand, gave a response that indicated not only some specific knowledge of that subject, i.e., that she had received an injection of a particular substance, but also the basis of that knowledge, i.e., that he had actually seen the hand, because he had "never seen anything like it." It is difficult to imagine that such things would be known or seen by a person whose job did not include knowing or seeing them, let alone a person who was not even employed by the hospital.

*Id*.

Here, Kelli has provided adequate circumstantial evidence, first, that the unknown declarant was an employee of BMH-D and, second, that the statement concerned a matter within the scope of her employment. Both the location of the identified declarant and "the nurse uniform worn by the declarant here … [are] proof she was a BMH[-D] employee." Doc. #569 at 2. Further,

Nikki provided a physical description of the employee. Also, the statement indicated some specific knowledge about Troy's treatment and death—subjects that are within the scope of a nurse's job. As in *Aumand*, "[i]t is difficult to imagine that such things would be known or seen by a person whose job did not include knowing or seeing them, let alone a person who was not even employed by the hospital." 611 F. Supp. 2d at 94. Accordingly, BMH-D's motion will be denied.

However, the challenged evidence will not be admissible against the Southaven defendants. That is because a statement against a party opponent will be "only admitted against the declarant-defendant, but not against his co-defendant, as will often be the case when a statement is admitted as a party-opponent statement in a trial involving multiple defendants." *United States v. Reed*, F.3d 102, 119 (5th Cir. 2018). Accordingly, the motion as to Southaven defendants will be granted.

## ii.   Tom Long

Tom Long, former Chief of Police for the City of Southaven, was deposed in connection to this case. BMH-D moves to exclude as hearsay Long's testimony that one of the Southaven police officers was told by a medical provider that Troy had to remain in a four-point restraint in order to receive treatment at BMH-D. Doc. #539-2 at 15–16. Both Kelli and the Southaven defendants responded in opposition to the motion.

In response, Kelli argues that this statement is admissible because "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. First, Kelli argues that the statement made by the medical provider to the officer is both an admission of a party opponent under FRE 801(d)(2)[3] that is not hearsay and a statement pertaining to medical treatment that qualifies as an

---

[3] A statement offered against a party opponent is not hearsay if the statement:

(A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the

exception to the hearsay rule under FRE 803(4)[4]. Doc. #569 at 3. Second, Kelli argues that the statement by the police officer entailed reporting a directive to a superior that is also an admission by a party opponent. *Id*. at 4.

The Southaven defendants also assert that the statement is admissible under FRE 805. The Southaven defendants note that the disputed statement by Long "is reflected in Officer [Todd] Baggett's testimony that he asked a Baptist nurse whether the 4 point restraint should be changed, and was advised that the Hospital's 'soft restraints' would not hold [Troy]." Doc. #565 at 2; *see* Doc #565-1 at 58–59. Lastly, the Southaven defendants argue that the statement is admissible under Federal Rule of Evidence 803(6)[5] as a record of a regularly conducted activity.

The statement by the medical provider to the Southaven police officer is not hearsay as it is a statement offered against a party opponent. *See Penn. Mar., Inc. v. Chevron U.S.A. Inc.*, No. CV 13-5441, 2014 WL 12539343, at *1 (E.D. La. July 28, 2014) (admitting deposition testimony of one defendant's employee regarding what the unidentified employee of another defendant told him over the radio as a statement by a party opponent).

However, the statement from the Southaven officer to Long is hearsay to the extent it is offered to prove the truth of the matter asserted—that BMH-D providers refused to treat Troy

---

scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy.
The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

[4] A statement made for medical diagnosis or treatment is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness, if that statement "is made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause."

[5] A record of an act, event, condition, opinion, or diagnosis is not excluded by the rule against hearsay if:
(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

unless he remained in a four-point restraint. This statement is not a statement offered against a party opponent, because the statement at issue is being offered against BMH-D, and not against the officer or any of the Southaven defendants. Also, this statement is not a record of a regularly conducted activity. Of course, this matter can be introduced into evidence through the testimony of Baggett, who was the Southaven officer present with Troy at BMH-D. For these reasons, BMH-D's motion in limine as to Long's testimony will be granted.

### iii. Janet Tharpe

Like Lemuel D. Oliver, M.D., BMH-D has filed a motion in limine to exclude portions of Janet Tharpe's testimony. Tharpe testified that she was present in the BMH-D emergency room on July 18, 2015, where she witnessed Troy being admitted. First, BMH-D moves to exclude Tharpe's testimony that Troy was moaning and yelling "breathe" loudly as "speculative and inadmissible hearsay" because "Tharpe testified that she was never able to see into the room where [Troy] was located and where [she] asserts she heard [the sounds] coming from." Doc. #540 at 5. Second, BMH-D moves to exclude Tharpe's opinion—derived from Troy passing by her on a stretcher while in the emergency department—that "I don't think he was focused on me. I think he was focused on trying to breathe" as "speculative [and] inadmissible." *Id*. at 5. Third, BMH-D moves to exclude pursuant to FRE 701[6] Tharpe's "impermissible and speculative lay opinion testimony … as to the cause of [Troy's] death." *Id*. at 6. Specifically, Tharpe testified regarding Troy's cause of death that she "would think it was having something to do with him being able to breath." Doc. #539-3 at 54–55.

---

[6] "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

In response, Kelli argues that Tharpe's testimony is admissible because "[e]ach of the possible declarants would qualify under an exception to the rule against hearsay." Doc. #569 at 4. First, Kelli argues that if Troy was the declarant, uttering the word "breathe" qualifies as a present sense impression, Fed. R. Evid 803(1), excited utterance, Fed. R. Evid 803(2), or a statement made for medical diagnosis, Fed. R. Evid 803(4)[7]. *Id.* Second, Kelli argues that if the declarant was a Southaven police officer or a BMH-D nurse, stating "breathe" qualifies as an admission of a party opponent, Fed. R. Evid. 801(d)(2). *Id.* at 5. Third, Kelli argues that "[i]n describing Troy's focus on breathing, [Tharpe] was relying on her own observations [that do] not implicate a particular field of knowledge." *Id.* at 6.

As a threshold matter, a hearsay statement must be offered into evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Here, it is less than clear what the matter asserted would be—let alone how the statement would prove that that matter is true. Yet, even if the Court assumes that this statement contains an assertion and is being offered to prove the truth of that assertion, it would still be admissible.

Rule 803(1) provides that hearsay statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it" "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(1). "[T]he burden of showing the elements of admissibility for a statement under the present sense impression exception, like the burden on evidentiary issues generally, is on the proponent of the evidence." *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08–cv–313, 2012 WL 2595275, at *9 (E.D. Tex. Jul. 5, 2012) (collecting cases). In this regard, the Fifth Circuit has held

---

[7] A statement made for medical diagnosis or treatment is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness, is that statement "is made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause."

that a delay of fifteen minutes between the occurrence of an event and a statement is insufficient to meet the immediacy requirement of the exception "unless the declarant was still in a state of excitement resulting from the event." *U.S. v. Cain*, 587 F. 2d 678, 681 (5th Cir. 1979).

Rule 803(2) provides that hearsay statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(2). "Unlike the present sense impression exception, the excited utterance exception is not determined solely based on the period of time that elapsed between a statement and the event it references." *Maria S. for E.H.F. v. Doe*, 267 F. Supp. 3d 923, 938 (S.D. Tex. 2017) (citing *United States v. Hefferon*, 314 F.3d 211, 223 (5th Cir. 2002)). "The Rule 803(2) Advisory Committee Notes state that 'spontaneity is the key factor.'" *United States v. Angleton*, 269 F.Supp.2d 878, 890 (S.D. Tex. 2003) (quoting Fed. R. Evid. 803(2) Advisory Committee's Note). An excited utterance must be spontaneous, excited, or impulsive, and not the product of reflection and deliberation. *United States v. Lawrence*, 699 F.2d 697, 704 (5th Cir. 1983); *see also* 2 Robert P. Mosteller, *McCormick on Evidence* § 272 (7th ed. 2016) ("A useful rule of thumb is that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.").

"Under Fed. R. Evid. 701, a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (internal quotation marks omitted). "In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts. If these two requirements are met a

layman can under certain circumstances express an opinion even on matters appropriate for expert testimony." *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) (internal quotation marks and citation omitted).

For the same reasons stated in the Court's order on Oliver's motion in limine, the Court finds that Tharpe may testify that she heard an unidentified individual state "breathe" in the room where Troy was being treated, because the statement would be admissible—for the reasons urged by Kelli—regardless of whether it was uttered by Troy, a Southaven police office, or a BMH-D nurse. If the declarant was Troy, the statement would qualify both as an excited utterance and present sense impression. If the declarant was a defendant, such statement would be admissible as a statement offered against a party opponent. Further, Tharpe possesses personalized knowledge of the facts underlying the opinion, which has a rational connection to those facts; however, this is not a situation where Tharpe's testimony may go beyond what she observed and heard to address issues of medical causation. Thus, to the extent BMH-D's motion seeks to preclude Tharpe from diagnosing Troy with a medical condition and assessing his cause of death, it will be granted such that Tharpe must restrict her testimony to lay opinions. Otherwise, the jury can weigh this evidence according to Tharpe's testimony and credibility on the stand.

### iv. Statements transcribed by private investigator

BMH-D represents that "[i]n discovery, it was revealed that a private investigator on behalf of [Kelli] had taken transcribed statements of individuals in relation to this matter. Two of those statements, from Ms. Tharpe and Charles Rogers, have been furnished to the Defendants." Doc. #540 at 6. BMH-D argues that the statements should be excluded because they are inadmissible hearsay. *Id.*

In response, Kelli acknowledges that "[w]hile the transcribed witness statements are generally hearsay, FRE 803(5) allows a recorded recollection to be read into evidence if the witness cannot recall the matter at trial …. In addition, a witness may use such a writing to refresh his memory while testifying under FRE 612."[8]  Doc. #569 at 6.  Thus, Kelli argues that "[i]f either Rogers and/or Tharpe cannot recall the events described in their transcribed statements, the Plaintiff will be entitled to either read the statements into the record or allow either witness to use their respective statements to refresh his or her memory."  Doc. #569 at 7.

Statements from witnesses to private investigators are "textbook hearsay."  *United States v. Neuman*, No. CRIM. 08-24, 2012 WL 1596908, at *4 (E.D. La. May 7, 2012).  Accordingly, BMH-D's motion will be granted.  However, to the extent that Kelli seeks to use these transcribed statements as a recorded recollection or a writing to refresh a witness, a ruling will be deferred until trial so that Kelli can lay the proper evidentiary foundation to use the transcribed statements.

For the reasons above, the motion [539] is **GRANTED in part** and **DENIED in part**.  The motion is **GRANTED** in terms of the testimony of Nikki Goode as to the Southaven defendants, the testimony of Tom Long, the testimony of Janet Tharpe as to expert medical opinions, and the statements transcribed by an investigator; the motion is **DENIED** in terms of the testimony of Nikki Goode as to BMH-D and the lay testimony of Janet Tharpe.

### D.  BMH-D's Fourth Motion in Limine [541]

In this three part motion, BMH-D, joined by the Southaven defendants on subpart I and subpart II, Doc. #546., move to exclude at trial "evidence and argument as to: (1) the alleged

---

[8] Recorded recollections are an exception to the hearsay rule.  A record satisfying FRE 803(5):

> (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge. If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

FRE 612 "gives an adverse party certain options when a witness uses a writing to refresh memory: (1) while testifying; or (2) before testifying, if the court decides that justice requires the party to have those options."

violation of [Kelli's] right to interstate travel and hospital visitation; (2) the whereabouts of [Troy's] clothing; [and] (3) blood asserted to have been drawn during [Troy's] BMH-D admission and the alleged loss or misplacement of blood asserted to have been drawn." Doc. #542 at 2.

### i. First Ground

According to BMH-D, as set forth in its motion for summary judgment, Kelli "has produced no proof that BMH-D violated her right to interstate travel and visitation." Doc. #542 at 3. Thus, BMH-D argues that Kelli should be precluded from alleging at trial that her right to interstate travel and visitation was violated because such a claim is "unfounded" and "prejudicial." *Id*. Because this claim was deemed abandoned and waived by separate order of this Court, BMH-D's first ground will be granted.

### ii. Second Ground

Counsel for Kelli questioned Brady Simpson, BMH-D's Rule 30(b)(6) designee, about "the disposition of [Troy's] clothing." *Id*. at 3. Simpson testified that BMH-D was unaware of what happened to Troy's clothing: "I can tell you in a code process, it's common that we cut the clothes off of the patient so that we can do a full assessment and try to get monitors on and that I do not know what happened to the clothes after that." Doc. #541-2 at 119. BMH-D nurse Creseana Gist also testified that she was unaware of what happened to Troy's clothes. Doc. #541-3 at 110.

BMH-D argues that evidence of Troy's clothing has no relevance because "[t]here are no allegations nor claims for relief against BMH-D in the Plaintiff's Amended Complaint which arise out of or relate to the whereabouts of [Troy's] clothing." Doc. #542 at 4. Further, BMH-D argues that "exclusion is likewise warranted pursuant to F.R.E. 403 because the probative value is substantially outweighed by the danger of unfair prejudice to BMH-D, confusion of the issues or potential for misleading the jury." *Id*.

In response, Kelli—who filed a motion for spoliation sanctions relating to the clothing that was denied by this Court—argues that the challenged evidence was relevant to a fact dispute with the Southaven defendants over whether a police dog had bit Troy on the chest. According to Kelli, "[t]hat the shirt was not preserved now precludes [her] from establishing her credibility surrounding the arrest of Troy." Doc. #570 at 2. Moreover, Kelli contends that if the clothing had been preserved, it "could also potentially establish Taser contact and/or proof that the police had grappled with Troy and torn his clothes." *Id*. at 3. Thus, Kelli argues her case has been prejudiced by the loss of the clothing as "[h]er inability to rely on the blood-stained clothes has impaired her ability to demonstrate relevant matters to the jury." *Id*. at 4.

Here, although the amended complaint does not raise the issue of Troy's clothing, the condition of the clothes is relevant to the claim that the Southaven defendants used excessive force on Troy. The fact that the whereabouts of the clothing is unknown does not detract from its relevance. As for Rule 403, the danger of unfair prejudice, confusing the issues, or misleading the jury does not substantially outweigh the probative value of this evidence. For these reasons, BMH-D's second ground will be denied.

###    iii.    Third Ground

According to BMH-D, "[q]uestioning from counsel indicates that [Kelli] may be of the mistaken belief that blood was drawn from [Troy] in the BMH-D emergency department and that BMH-D lost or misplaced the blood drawn." Doc. #542 at 4. BMH-D avers that "[d]iscovery in this matter, however, has revealed no evidence that blood was drawn from [Troy] during his admission." BMH-D thus argues that "any argument, reference, testimony or evidence that [Troy's] blood was drawn during his subject admission or that BMH-D lost or misplaced any blood drawn is unsupported and should be excluded." *Id*. Further, BMH-D argues that "exclusion is

likewise warranted pursuant to F.R.E. 403 because the probative value is substantially outweighed by the danger of unfair prejudice to BMH-D, confusion of the issues or potential for misleading the jury." *Id.*

In response, Kelli avers that "[w]hile it appears that the blood was never drawn, orders for the blood draw appear in [Troy's] medical records." Doc. #570 at 4. Thus, Kelli offers that she "does not intend to argue that a blood draw was performed, but will refer to the fact the blood draw was ordered to demonstrate what information was available to hospital personnel and what information was missing when they failed to provide lifesaving treatment." *Id.* Kelli has thus agreed not to argue, refer, elicit testimony, or suggest that Troy's blood was drawn at BMH-D and may present evidence that the blood draw was ordered on Troy's medical chart. Evidence that a blood draw was ordered by BMH-D is relevant under Rules 401 and 402 and does not run afoul of Rule 403. For these reasons, BMH-D's third ground will be denied.

For these reasons, the motion [541] is **GRANTED in part** and **DENIED in part**. It is **GRANTED** as to the first subpart and **DENIED** in all other respects.

### Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that

1. Defendant BMH-D's *First Motion in Limine* [535] is **DENIED**.

2. Defendant BMH-D's *Second Motion in Limine* [537] is **DENIED**.

3. Defendant BMH-D's *Third Motion in Limine* [539] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** in terms of the testimony of Nikki Goode as to the Southaven defendants, the testimony of Tom Long, the testimony of Janet Tharpe as to expert medical opinions, and the statements transcribed by an investigator. The motion is

**DENIED** in terms of the testimony of Nikki Goode as to BMH-D and the lay testimony of Janet Tharpe.

4.  Defendant BMH-D's *Fourth Motion in Limine* [541] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** as to the first subpart and **DENIED** in all other respects.

**SO ORDERED**, this the 7th day of March, 2019.


/s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI