# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**KELLI DENISE GOODE, Individually,
and also as the Personal Representative of
Troy Charlton Goode, Deceased**      **PLAINTIFF**

VS.      **CIVIL CASE NO. 3:17CV60-DMB-RP**

**THE CITY OF SOUTHAVEN, et al.**      **DEFENDANTS**

## AFFIDAVIT OF JEREMY BOND

STATE OF MISSISSIPPI

COUNTY OF DESOTO

Personally appeared before me, the undersigned authority in and for the aforesaid jurisdiction, Jeremy Bond, who on his oath stated as follows:

1. My name is Jeremy Bond. I have made this affidavit based upon my personal knowledge.

2. I reside in Southaven, Mississippi, and work as a police officer in the City of Southaven.

3. On July 18, 2015 at approximately 7:45 p.m., I was responding to a disturbance at 3451 Goodman Road East (Rancho Grande). The call was dispatched as a white male and white female in a domestic disturbance in the parking lot. While I was responding, dispatch relayed information that the male was running West on Goodman Road.

4. Shortly after Officer Todd Baggett and Officer Jason Scallorn radioed on scene, Officer Scallorn informed dispatch that both his K-9 partner and a taser had been deployed. I arrived on scene shortly after the radio call from officers already on the scene.

5. When I arrived, I observed Officer Rich and Sgt. Tyler Price physically trying to restrain a white male (later identified as Troy Goode, white male), in the grass area between the parking lot and Goodman Road. Mr. Goode was being extremely combative and belligerent. Mr. Goode continued to try and kick, bite and spit on officers while we were waiting for EMS to arrive. We initially used hand cuffs behind the back to control him. He continued to fight us and resist.

Because of his resistance as we attempted restrain him with hand cuffs and calm him, we decided to use leg restraints. I placed leg restraints on Mr. Goode.

6. I was warned by Sgt. Price that Mr. Goode may have liquid LSD on his hands. I asked Officer Baggett to grab some hand sanitizer, and it was placed on his hands and wiped around in an attempt to avoid officers receiving any type of incidental contact.

7. Once Mr. Goode was placed in restraints and controlled as much as possible, I went over to Kelli Goode, Mr. Goode's wife. She repeatedly apologized for his behavior, and stated that he had done 3 or 4 drops of LSD and was not in his "right mind". I asked her where he got the LSD and how long ago he took it. She stated that he got it in the parking lot of Snowden and had taken it about 5:30 p.m. She again apologized for his behavior.

8. EMS arrived three to five minutes after Mr. Goode was restrained with handcuffs and leg restraints. I warned them about the information regarding Mr. Goode ingesting liquid LSD, and that we had attempted to decontaminate him using hand sanitizer.

9. Although Mr. Goode was restrained, he continued to be combative and belligerent, and it was determined that he would be transported via ambulance and that Officer Rich and Officer Baggett would ride in the ambulance to the hospital. I followed the ambulance.

10. When we arrived at the hospital, Mr. Goode was still being combative and yelling incoherent gibberish along with obscenities so loud that emergency personnel made the determination to place Mr. Goode in the decontamination room. I informed the emergency personnel of the information that Mrs. Goode had told me regarding the LSD, and left the hospital. I had no other contact with Mr. Goode, EMTs or anyone with the hospital.

FURTHER AFFIANT SAYETH NOT.

_____
JEREMY BOND

SWORN TO AND SUBSCRIBED BEFORE ME on this the 14 day of March, 2019.

_____
NOTARY PUBLIC

(S E A L)

My Commission Expires:

1120243

2

(SEAL: STATE OF MISSISSIPPI NOTARY PUBLIC ID # 124764 TERRA L. SMITH Commission Expires July 22, 2022 DESOTO COUNTY)



**To:** Lt. Little

**From:** Ofc. Jeremy Bond #1319

**Date:** July 19th, 2015

**Subject:** Incident 201500046947

On July the 18th, 2015 at approximately 7:45 PM (1945 hours), I was responding to a disturbance at 3451 Goodman Rd E (Rancho Grande). The call was dispatched as a white male and white female in a disturbance in the parking lot. While I was responding, dispatch relayed information that the male was running west on Goodman Rd.

Shortly after Officer Baggett and Officer Scallorn radioed on scene, Officer Scallorn informed dispatch that both his K-9 partner and a taser had been deployed. I arrived on scene shortly after that.

When I arrived, I observed Officer Rich and Sgt. Price physically trying to restrain a white male (later identified as Troy CHARLTON w/m dob: 8/21/84) in the grass area between the parking lot and Goodman Rd. The male was being extremely combative and belligerent. Mr. CHARLTON continued to try and kick, bite and spit on officers while we were waiting for EMS to arrive, so I placed leg restraints on Mr. CHARLTON. I was informed by Sgt Price that Mr. CHARLTON had liquid LSD on his hands. I asked Officer Baggett to grab some hand sanitizer, and it was placed on his hands and wiped around in an attempt to avoid officers receiving any type of incidental contact.

Once he was placed in restraints and was no longer a physical threat to officers, I went over to Kelli GOODE (w/f dob: 4/16/84) that was identified as his wife. She repeatedly apologized for his behavior, and stated that he had done 3 or 4 drops of LSD and was not in his

EXHIBIT 7

"right mind". I asked her where he got the LSD and how long ago he took it. She stated that he got it in the parking lot of Snowden and had taken it about 5:30 PM (1730 hours). She again apologized for his behavior.

When EMS arrived, I informed them about the information regarding Mr. CHARLTON ingesting liquid LSD, and that we had attempted to decontaminate him using hand sanitizer.

Mr. CHARLTON continued to be combative and belligerent, and it was determined that he would be transported via ambulance and that Officer Rich and Officer Baggett would ride in the ambulance to the hospital. I followed the ambulance.

When we arrived at the hospital, Mr. CHARLTON was still being combative and yelling incoherent gibberish along with obscenities so loud that emergency personnel made the determination to place Mr. CHARLTON in the decontamination room. I informed the emergency personnel of the information that Ms. GOODE had told me regarding the LSD, and left the hospital. I had no other contact with Mr. CHARLTON.
END OF REPORT

Office Jeremy Bond #1319
Patrol Division
Southaven Police Department